# DE MICHELE v. LONDON & LANCASHIRE FIRE INSURANCE COMPANY.

No. 2271. Decided January 16, 1912 (120 Pac. 846).

1. INSURANCE—FIRE INSURANCE—PROOF OF LOSS. An insurance agent's written authority to receive proposals of insurance against loss or damage by fire, "with power only to issue, countersign, renew, and cancel policies of insurance and to make indorsements thereon" and to receive premiums subject to the rules adopted by the company and a policy issued by him required insured to give immediate notice of loss "to this company" within sixty days after the fire, unless such time is extended by the company. *Held*, that the agent was authorized to receive notice and proof of loss in absence of express provision to the contrary in the policy. (Page 314.)

2. EVIDENCE—BEST EVIDENCE—DUPLICATE ORIGINAL. A carbon copy of the proof of loss was admissible in an action on a fire policy as a duplicate original without accounting for the original served upon the insurance agent. (Page 316.)

3. PLEADING—ANSWER—ADMISSIONS—"ISSUE." An allegation of the answer in an action on a fire policy that "defendant issued to the plaintiff its policy of insurance" on the goods insured, admitted the unconditional delivery of the policy to insured; the word "issue" meaning to deliver for use, and, as used in an allegation in an answer that plaintiff procured a policy of insurance to be issued to him, is equivalent to an allegation that it was delivered to and accepted by plaintiff. (Page 317.)

4. INSURANCE—FIRE INSURANCE—ACTIONS—DEFENSES—NONPAYMENT OF PREMIUMS. If a fire policy was unconditionally delivered to insured in absence of a showing that the credit was not extended, that the premium was not paid at the time of the fire thirty days thereafter, could not prevent its enforcement, a binding obligation to pay being sufficient to support the contract. (Page 317.)

5. INSURANCE—FIRE INSURANCE—PAYMENT OF PREMIUM—CONDITION PRECEDENT. If a fire policy was unconditionally delivered so as to constitute a waiver of a provision that no liability attached until the premium was paid, it will be enforced though the premium was not paid when the fire occurred. (Page 319.)

6. INSURANCE—PAYMENT OF PREMIUM—WAIVER. Whether an unconditional delivery of a policy is a waiver of prepayment of the premium is a question of fact for the jury. (Page 320.)

7. INSURANCE—FIRE INSURANCE—ACTIONS—ADMISSION OF EVIDENCE.
A question to the company's agent in an action on a fire pol-
icy whether insured did "ever pay the premium on this insur-
ance to you" was properly excluded since a negative answer
would not have necessarily determined whether the premium
was paid to the company.  (Page 320.)

8. INSURANCE—FIRE INSURANCE—EVIDENCE—SUFFICIENCY. Evidence
in an action on a fire policy *held* to take the case to the jury.
(Page 321.)

STRAUP, J. (dissenting).

APPEAL from District Court, Second District; *Hon. J. A.
Howell,* Judge.

Action by F. DeMichele against the London & Lanca-
shire Fire Insurance Company.

Judgment for plaintiff, defendant appeals.

AFFIRMED.

*T. D. Johnson* for appellant.

*Jno. C. Davis* and *H. H. Henderson* for respondent.

FRICK, C. J.

This action was brought to recover upon an insurance
policy issued by appellant to insure respondent's property
against loss by fire to the amount of $1000.  Respondent, in
his complaint, in substance, alleged the issuance and delivery
of the policy to him by appellant; that during the life of
the policy a fire occurred by which the property covered by
the policy was destroyed, to his damage in the sum of $1000;
that he had complied with all of the conditions of the policy,
and that the appellant had failed to do so, wherefore he asked
judgment for the amount of the damages.  Appellant, in
its answer, admitted the issuance of the policy in question;
admitted that the alleged fire occurred during the life of the
policy, and denied all other allegations contained in the com-

plaint. As affirmative defenses, appellant, in substance, averred: (1) That the premium mentioned in the policy had not been paid; (2) that the respondent was not the owner of the property covered by the policy in question; (3) that no proofs of loss had been furnished as provided in the policy, or at all; and (4) that the suit was prematurely brought. Respondent, in his reply, denied all of the affirmative matters contained in the answer. Upon the foregoing issues a trial was had to a jury, which resulted in a verdict and judgment in favor of respondent, to reverse which appellant prosecutes this appeal.

Appellant assigns and relies upon the following alleged errors: (1) That the court erred in admitting in evidence a copy or duplicate of respondent's purported proofs of loss; (2) that the court committed error in sustaining the objection to the question propounded to appellant's agent who issued the policy as follows: "Did De Michele (respondent) ever pay the premium on this insurance to you?" and (3) that the court erred in denying appellant's motion for nonsuit.

In appellant's answer it admitted that the policy in question was issued to the respondent on the 4th day of December, A. D. 1909, and that the fire alleged to have destroyed the property occurred on the night of the 4th day of January, A. D. 1910. The undisputed evidence is to the effect that immediately after the fire appellant's agent was notified thereof, and that on February 3, 1910, respondent's attorney served a paper which purported to be the proofs of loss upon J. J. Brummitt, who was authorized in writing by appellant "to receive proposals for insurance against loss or damage by fire or lightning in Ogden and vicinity with power only to issue, countersign, renew, and cancel policies of insurance and to make indorsements thereon as provided by their terms and conditions. Also to receive moneys and payment of all premiums, subject, however, to such rules and regulations as may be adopted by the company." The foregoing is the language of the commission issued by appellant as evidence of Mr. Brummit's

authority. Service of the proposed proofs of loss was duly admitted by indorsement on the paper referred to by said Brummitt on the day aforesaid over his own signature. It is not claimed that the contents of said paper were insufficient either in form or substance as proofs of loss, but it is contended that said Brummitt was not authorized to receive proofs of loss, and that he was not the proper person upon whom they could be served in order to bind appellant. This contention is based upon the wording of what is contained in Mr. Brummitt's commission, the material portions of which we have set forth. It is claimed that Mr. Brummitt was given "power only to issue, countersign, renew, and cancel policies," etc. While, as indicated in Mr. Brummit's commission, there seems to be a limitation, yet there was no limitation of that character contained in the policy itself, and no claim is made that the respondent had actual knowledge of what was contained in Mr. Brummitt's commission in that regard. The policy in terms provided that in case of a fire "the insured shall give immediate notice of any loss thereof in writing to this company . . . and within sixty days after the fire, unless such time is extended in writing by this company shall render a statement to this company signed and sworn to by said insured." The foregoing provision is followed by a statement of what must be made to appear in the foregoing statement of loss. Upon a comparison of the foregoing provisions with the statements contained in the paper served as proofs of loss as aforesaid we are of the opinion that the statements contained in the proposed proofs of loss complied with the conditions of the policy in that regard. We are also of the opinion that notwithstanding the supposed limitation contained in Mr. Brummitt's commission, he, as between respondent and the company, was, nevertheless, authorized to receive notice of the loss by fire and was also the proper person under the terms of the policy to be served with or to receive proofs of loss as the representative of the company. In referring to this question, the author of Joyce on Insurance, in volume 4, sec. 3312, says:

"A provision in the policy that notice shall be given to and proofs furnished the company is, as a general rule, complied with by giving the notice and furnishing the proofs to an agent of the company."

The authorities seem to agree that unless there is an express provision to the contrary in the policy an agent who is authorized to solicit insurance, to issue and countersign policies and to collect premiums, is an agent representing the company for the purpose of receiving or being served with the proofs of loss in case of a fire. It is held that furnishing proofs of loss to such an agent is furnishing them to the company where the policy requires proofs to be furnished to the company. (*Walker v. Lancashire Ins. Co.*, 188 Mass. 560, 75 N. E. 66; *Harnden v. Milwaukee M. Ins. Co.*, 164 Mass. 382, 41 N. E. 658, 49 Am. St. Rep. 467; *Vesey v. Com'l Union Assur. Co.*, 18 S. D. 632, 101 N. W. 1074; 4 Cooley's Bfs. on L. of Ins., p. 3379 and cases there cited.)

It is also held in the foregoing cases that the insured is not bound by any special limitation of power that the company may have imposed upon such an agent unless the insured had knowledge thereof. We are of the opinion, therefore, that in this case the proofs of loss were properly left with Mr. Brummitt as the representative of the company.

Appellant's counsel in effect contends, however, that although it be conceded that Mr. Brummitt was the proper person to receive the proofs of loss, yet the court erred in admitting in evidence a copy of the purported proofs of loss in this case because the original served on Mr. Brummitt had not been accounted for. What the court admitted in evidence, however was not a copy, but, under the rule established by the modern decisions, was a duplicate original. Mr. Davis, who represented the respondent, and who prepared and served the proofs of loss upon Mr. Brummitt, testified that he prepared three duplicates, one of which he left with Mr. Brummitt, one he mailed to Mr. McDonald, appellant's manager and adjuster at Salt Lake City, and the third he kept. The one mailed to the manager was, however, not received by him. Upon the one Mr. Davis kept Mr.

Brummitt acknowledged service in writing duly signed by himself, and this is the one that was admitted in evidence and to which the objection relates. In *International Harvester Co. of America v. Elfstrom,* 101 Minn. 263, 112 N. W. 252, 12 L. R. A. (N. S.) 343, 118 Am. St. Rep. 626, 11 Ann. Cas. 107, the rule that governs under such circumstances is stated in the headnote as follows:

"The different numbers or impressions of a writing produced by placing carbon paper between sheets of paper and writing upon the exposed surface are duplicate originals and either may be introduced in evidence without accounting for the nonproduction of the other."

A mere inspection of the proofs of loss kept by Mr. Davis, a duplicate of which had been served on Mr. Brummitt, discloses that it was what is commonly called a carbon copy and was thus a duplicate original within the rule stated by the Supreme Court of Minnesota in the Elfstrom Case just referred to. The precise question here involved was before the Missouri Court of Appeals in *Catron v. Ins. Co.,* 67 Mo. App. 544. In that case the copy of the proofs of loss that was retained by the insured was, over the objection of the company, admitted in evidence without serving notice upon the company to produce the one served upon it and without accounting for that one. The court held that the paper was properly admitted in evidence under the rule which applies to duplicate originals. To the same effect is the case of *Westbrook v. Fulton,* 79 Ala. 510. The district court, therefore, did not err in admitting in evidence respondent's proofs of loss.

Nor is the contention tenable that the court committed prejudicial error in sustaining the objection to the question appellant's counsel propounded to Mr. Brummitt relative to the nonpayment of the premium on the **3, 4** policy in question. As we have seen, the appellant expressly admitted in its answer that "the defendant issued to the plaintiff its policy of insurance," on the stock of merchandise to the amount of $1000. The foregoing admission that the policy was issued to the respondent on the stock of

merchandise, if it means any thing, means that the policy was unconditionally delivered to him.   As is well said in 4 Words & Phrases, 3780:

"The word 'issue' means to deliver for use, and, as used in an allegation in an answer that plaintiff procured to be issued to her a policy of insurance, will be construed as equivalent to an allegation to deliver to and acceptance of such policy by the plaintiff."

(See, also, *Sisk v. Citizens' Ins. Co.,* 16 Ind. App. 565, 45 N. E. 804, and *Spencer v. Myers,* 73 Hun, 274, 26 N. Y. Supp. 371.)   Nor is there anything in the answer by which the foregoing admission is in any way qualified.   Neither is it claimed in the answer, nor was it at the trial, that the policy in question was delivered upon the condition that the insurance should not become effective or should cease to be so after a specified time in case the premium remained unpaid.   It is true that in the attempt to plead the affirmative defense of nonpayment the appellant averred "that the said policy of insurance sued upon in this action was issued to the plaintiff by the defendant, and the property in such policy mentioned insured by defendant against loss or damage by fire in consideration of a premium of twenty dollars  to be paid by plaintiff to defendant; that said plaintiff has never paid said premium nor any part thereof."   This is all there is with regard to the nonpayment of the premium.   There is thus no claim that the policy was delivered upon any condition precedent or that it should not have become effective unless the premium were paid, or that credit was not extended, nor that the policy was not in full force and effect from the time of its delivery.   In addition to this, the policy was produced at the trial by respondent and was by him introduced in evidence.   A careful inspection of its terms and conditions also shows that there is nothing in the policy which prevented the insurance from becoming effective without the payment of the premium.   We thus have before us a record from which it appears that a policy had been unconditionally delivered to the insured as a completed contract of insurance.   The mere fact, therefore, that the premium may not have been

paid at the time of the fire, which occurred just thirty days after the policy was delivered, is no defense to the enforcement of the policy. Neither is it a question of a want or failure of consideration. A binding obligation to pay the premium is as good a consideration to support a contract of insurance as the payment thereof would be. Neither is the question of a waiver of a condition precedent involved. Such a question would, no doubt, be one of fact. All that is involved upon the question now under discussion is whether, under the conceded facts contained in the pleadings and the evidence, the respondent had an enforceable contract of insurance. Under the evidence and the terms of the policy, the contract of insurance was complete and enforceable from its delivery, regardless of whether the premium was paid or not. If appellant had not set forth the fact of nonpayment of the premium in its answer, then, in view of the unconditional delivery of the policy, we would have to assume either that the premium was paid when the policy was delivered or that credit had been extended to the respondent. While appellant has negatived payment in its answer as a defense, it has not done so with regard to the extending of credit. Nor did it offer to prove that credit was not extended, and hence it must abide by the effect that the unconditional delivery of the policy has. Evidence that the premium was not paid, under the circumstances of this case, was therefore entirely immaterial in so far as having any effect upon the contract of insurance or its enforcement in a court of justice.

A policy of insurance will be enforced even though it contains an express provision that no liability shall attach until the premium is paid if the policy was unconditionally delivered as a completed contract of insurance. The author in 1 Joyce on Insurance, section 79, states the rule in the following words:

"Where the contract is otherwise complete, an unconditional delivery of the policy operates as a waiver of the prepayment of the premium, notwithstanding an express provision therein that the company shall not be liable until the premium is actually paid, and the company cannot, under such circumstances, cancel the policy for nonpayment without first putting the insured in de-

fault by some act, such as a new demand. But the mere non-payment of the premium on demand, does not of itself destroy the policy where the company fails to give notice of its election to rescind the contract."

The law as stated by Mr. Joyce is supported by the following authorities: *Farnum v. Phoenix Ins. Co.,* 83 Cal. 246, 23 Pac. 869, 17 Am. St. Rep. 233; *Griffith v. N. Y. Life Ins. Co.,* 101 Cal. 627, 36 Pac. 113, 40 Am. St. Rep. 96; *Berliner v. Travelers' Ins. Co.,* 121 Cal. 451, 53 Pac. 922; *Raulet v. N. W. etc., Ins. Co.,* 157 Cal 224, 107 Pac. 296.

Under such circumstances, however, the question of waiver becomes one of fact to be submitted to and determined by the jury. As we have already attempted to show, in this case there is no question of waiver, and hence there was no question of fact either to be established or submitted to the jury with respect to whether the policy was in effect or not. In view, therefore, that there can be no escape from the conclusion that the appellant pleaded the fact of and offered proof with respect to nonpayment of the premium for the sole purpose of preventing the enforcement of the policy, it must follow that although Mr. Brummitt had answered the question in the negative, it could not have affected the enforcement of the policy any more than evidence of the fact that respondent was still owing for the goods that were covered by the policy and had been destroyed by the fire could have affected it. Appellant was therefore not prejudiced by the ruling complained of.

But there is still a further reason why appellant cannot legally complain of the ruling in question. The question to which the answer was refused was very adroitly framed and if answered in the negative would still not have settled the ultimate fact whether the premium was or was not paid to appellant. The question is, "Did De Michele ever pay the premium on this insurance to you?" The witness could have truthfully answered in the negative, and yet the question of whether the premium had in fact been paid to the appellant still remain open. When respondent's

counsel objected to the materiality of the evidence sought to be elicited by the question giving his reasons therefor, the court asked appellant's counsel what he had to say to the objection, and all he said was, "I don't care to argue it." Let us assume that in appellant's answer it had pleaded the precise fact that by the question it sought to prove, namely, that the premium was never paid to its agent, Mr. Brummitt; would any court, over an objection timely interposed, hold such a plea sufficient to constitute a plea of nonpayment? The mere statement of the proposition is a sufficient answer. We are thus confronted with a record where the court excluded evidence which if admitted would not have established the ultimate fact which it is contended the complaining party had a legal right to establish but was prevented from doing so by the ruling complained of. It is undoubtedly true that a question may not cover the whole ground that is necessary to cover in order to establish a fact, and yet to exclude the answer thereto may constitute prejudicial error. But under such circumstances the party asking the question should at least state to the court that he will follow up the question with others, and thus will cover the ground necessary to be covered in order to make the excluded answer material. This was not done in this case, and hence, for the reasons already given, this record does not affirmatively show that the court erred in excluding Mr. Brummitt's answer, although it be assumed by us that the answer would have been in the negative.

What has been said also practically disposes of the assignment that the court erred in overruling the motion for nonsuit. When the motion was interposed, respondent had testified that he was the owner of the property covered by the policy; that it was destroyed by fire, and the value thereof. This, in connection with the admissions contained in the answer and the evidence we have held was properly admitted, made a *prima facie* case. The motion was therefore properly denied.

The judgment is affirmed, with costs to respondent.

McCARTY, J., concurs.

40 Utah—21

STRAUP, J.

I dissent upon the ground that the court erroneously refused the defendant to show that the premium for the insurance was not paid. In this particular the plaintiff alleged that the defendant "for and in consideration of the sum of twenty dollars to it in hand paid insured the plaintiff" in the sum of $1000 against loss by fire on property described in the complaint; that "said policy of insurance is numbered 7714618," and was "dated December 4, 1909," and "insured" plaintiff's property for the term of one year from the 7th day of November, 1909. He then alleged his loss by fire, a demand for payment, and defendant's refusal to pay, and made the general averment that he performed "on his part all the requirements demanded by said policy of insurance." Further than these averments there is no allegation in the complaint that the defendant issued or delivered the policy; neither was the substance of the terms of the policy pleaded, nor was the policy or a copy thereof attached to or made a part of the complaint, nor was it otherwise therein referred to. The defendant in its answer admitted that "on or about the 4th day of December, 1909, in lieu of another policy theretofore issued to J. T. Smyth the defendant issued to the plaintiff its policy of insurance" for a term of one year from the 7th day of November, 1909, for the sum of $1000, on the property described in the complaint, but denied that the payment of the premium had been made, and averred "that the said policy of insurance sued upon in this action was issued to the plaintiff by defendant and the property in said policy mentioned insured by defendant against loss or damage by fire in consideration of a premium of twenty dollars to be paid by plaintiff to defendant; that said plaintiff has never paid said premium nor any part thereof." The defendant made no other admissions or allegations of an unconditional or other delivery of the policy. To this allegation of nonpayment of the premium the plaintiff filed a reply in which he denied "that said plaintiff has never paid said premium or any part thereof."

Here we have the averments of both parties that the policy was issued in consideration of the payment of a premium of twenty dollars and a direct issue upon the assertion of one that the premium was paid and a denial by the other of that fact, and again upon the assertion of one of the nonpayment of the premium and a denial by the other of such fact. The only proof of payment adduced by the plaintiff was the production of the policy and putting it in evidence. That, I think, was sufficient, for, from the fact of such production of the policy from his custody, a rebuttable—not a conclusive—presumption of another fact arose, that the premium was paid by him. (*Berliner v. Travelers' Ins. Co.,* 121 Cal. 451, 53 Pac. 922.) The defendant's motion for nonsuit on the ground of a want of evidence to show that the premium had been paid was therefore properly overruled. When the defendant offered to show that the premium was not paid, by propounding the following question to a witness called by the defendant, and who, on its behalf, negotiated the transactions with respect to the policy, did the plaintiff "ever pay the premium on this insurance?" counsel for plaintiff objected as follows: "I object to that as being incompetent, irrelevant and immaterial; there is no forfeiture clause in this policy of insurance, it does not make any difference whether it has been paid or not, the policy is still in force and effect. If we owe that twenty dollars they can collect it, and we have their receipt for it in that policy, and there is no forfeiture clause. They are not pleading it as a set-off or counterclaim." The Court: "What do you say to that, Mr. Johnson [counsel for defendant]?" Mr. Johnson: "I don't care to argue it." The Court: "Objection sustained." Mr. Johnson: "Save an exception."

Of course the law is well settled that even where prepayment of the premium is expressly provided as a condition precedent to liability, yet such prepayment may be waived by extending credit, or by an unconditional delivery of the policy from which the giving of credit may be presumed, or by proof of other facts or circumstances showing a waiver of prepayment; and where the fact is made to appear, and is found,

that credit was given, or prepayment was otherwise waived, the insurer m'ay not avoid liability on an otherwise completed and subsisting contract of insurance for want of prepayment, or for nonpayment of the premium, unless the nonpayment was not even within the terms of the waiver. But when the defendant offered to show that the premium was not paid, what right, upon the issues here, had the court to conclusively presume, without evidence, that credit was extended for thirty days or more, or to conclusively presume that payment of the premium during that time was otherwise waived? And though it be conceded that under the issues the plaintiff had the right to show an excuse for nonpayment of the premium by showing that credit was given for such period, or otherwise to make proof of a waiver of payment during such time, without allegations of a waiver (*Berliner v. Travelers' Ins. Co., supra*), yet, what right had the court to assume that such proof could or would be indisputably and conclusively made, or that an unconditional delivery of the policy was made, or other delivery under circumstances to justify a conclusive presumption of a waiver of payment for such a period? There were neither allegations nor evidence of such facts. The only evidence of an unconditional or other delivery of the policy is the letting of the policy in evidence upon plaintiff's offer—the production of the policy from his custody. While this and the defendant's averment that it issued the policy is enough to show a delivery, yet it is far from showing circumstances of an unconditional delivery, or of a delivery under circumstances to justify a presumption, much less a conclusive presumption, of a waiver of present or prepayment, or of the giving of a credit for a period of thirty days or more. When courts say that an unconditional delivery of a policy is a waiver of prepayment, all that is meant by that is, that from such fact it will be presumed, in the absence of direct evidence to the contrary, that credit was given for a reasonable time within which to pay the premium. The proposition to me seems very simple: Upon the issues the plaintiff made a *prima facie* case of a valid and subsisting contract by the production of the policy, which, on its

face, appears to be a completed and existing contract at the time of the loss; the burden of overcoming that *prima facie* case then devolved upon the defendant; but when it undertook to bring forward something tending to overcome it—proof that there was a total want of failure of consideration—the court stopped it. As well say the state could not prove an accused guilty of the charged offense because the law presumed him innocent. The question of admissibility of evidence was here confused with that of the effect of evidence.

The question propounded by the defendant, on its face, showed the character of the evidence sought to be elicted, and the particular fact in issue which it tended to prove. This would not have been any more evident, had counsel stated what the answer of the witness would be to the question propounded were the witness permitted to answer, or what evidence was sought by the question propounded. The suggestion that the defendant, to be entitled to make proof of nonpayment of the premium, ought to have pleaded such nonpayment as a counterclaim, is, I think, wholly beside the question.