HOUSE, Respondent, v. BANKERS' RESERVE LIFE COMPANY of OMAHA, Appellant.

(180 N. W. 69.)

(File No. 4700.    Opinion filed December 1, 1920.    Rehearing denied January 7, 1921.)

1. **Insurance—Life Insurance—Application Excluding Representations Unless Contained Therein, And Declaring Policy in Force When Delivered to Healthful Applicant—Policy, Making Application Part Thereof And Fixing Date of Payments After Advance Premium—Date of Medical Examination—Testimony of Manager as Determining Operation of Policy, Admissibility.**

A written application for life insurance stated that no statements, representations, or information made or given by or to the person soliciting or taking the application, or to any other person shall be binding on insurance company or affect its rights, unless such statements, etc., be reduced to writing and contained therein, and that under no circumstances shall the applied-for insurance be in force until payment of first premium while applicant is in good health and delivery of the policy to him in person during his life time and while in good health, the policy itself providing that advance premium must be paid on or before delivery thereof, and that in consideration thereof and of a like amount on or before delivery thereof, and that in consideration thereof and of a like amount on or before the 30th day of January each succeeding year, etc., the company insures the life of the applicant. Held, that testimony of insurer's local agent who solicited and took the application, and who testified that when he took it one S., insurer's state manager, was present and stated to applicant that the policy would be in force as soon as O. Kd by the doctor, or as soon as he took the medical examination, that the doctor was practically the man who decided whether the applicant could get the insurance, was inadmissible as varying terms of a written instrument. So held, where trial court found that by virtue of S's statement, the evidence of insurer's president that according to universal rule all its policies were dated as of date of reference of application to medical committee, and the fact that the policy by its terms commenced the term of insurance on January 30, the company impliedly waived the stipulation of the application as to time of commencement of the contract; it being uncontroverted that the

applicant, notwithstanding the oral conversation with S. executed and delivered to insurer such written application; construing Sec. 860, Code 1919, providing that the execution of a contract in writing, whether the law requires it to be written or not, supersedes all oral negotiations or stipulations concerning its matter which proceeded or accompanied execution thereof; that the testimony in question is within said rule.

2. **Same—Waiver of Provisions of Written Application, By Agreement, Conduct, Terms of Policy—Conflict Between Application and Policy, Latter Controlling—Rule.**

It seems to be generally held that parties to insurance contracts may, by express or implied agreement, subsequent conduct, or terms of the policy waive provisions of a written application, and that where there is conflict or material variance between the application and the policy, that latter must control.

3. **Life Insurance—Policy Starting Running of Contract at Earlier Date Than Specified in Application, As Waiver of Date of Application, Policy as Controlling—Rule—Liability Dependent on Contractual Relations At Insured's Death.**

If by a lawful life insurance policy subsequently executed, insurer materially varied from terms of application, and issued a policy expressly starting running of the contract at earlier date than that specified in the application, the policy as drawn being accepted by applicant in his lifetime, then the provision of the application as to when the contract should commence is waived, and the policy's provisions must control; under which circumstances the admission of testimony of a local agent, that the manager informed applicant that it would be in force when medical examination was had, although erroneous, would be non-prejudicial to insurer; and held, in absence of conduct or circumstance constituting waiver of such provision in the application, other than issuance of the policy and circumstances surrounding issuance thereof, the question arises whether a binding contract came into existence between insurer and applicant prior to his death on day preceding date of approval and execution of the policy—the latter being antedated January 30, Therefore held, that insurer's liability is determined from contractual relations existing at instant of insurer's death, insurer, after such death, being powerless to make a new contract with him, or to change former contractual relation existing, whether it had notice of his death or not.

4. **Same—Application Declaring Policy Not in Effect Until Delivery to Insured in Good Health, Application Controlling Re Insurance Contract—Delivery After Insured's Death Ineffectual—Rule Applicable**

Where an application for life insurance declared that under

no circumstances should the insurance applied for be in effect until policy was delivered to applicant in his lifetime while he was in good health, held, that such declaration was in full force and effect, and fulfillment of such agreement was a condition precedent to completion of the insurance contract; and that a policy issued after his death was ineffectual either as a completed insurance contract or as a waiver of the stipulation in the application, and notwithstanding the policy itself, executed on the day following insured's death, fixed a date for future payments earlier in the year than time of insured's death, no binding contract of insurance existed; following Stemler v. Stemler, 31 S. D. 595; that indisputable condition to taking effect of the policy—that of insured being alive and in good health when it was delivered—never was and could not be complied with; and the parties might contract out of their negotiations any uncertainty as to when the insurance risk should attach and be binding and this they did.

Appeal from Circuit Court, Minnehaha County. Hon. Louis L. Fleeger, Judge.

Action by Kate House, against the Bankers' Reserve Life Company of Omaha, a corporation, to recover upon a policy of life insurance. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed, and cause remanded.

*Boyce, Warren & Fairbank,* for Appellant.

*George J. Danforth,* for Respondent.

(1)   To point one of the opinion, Appellant cited: Stevens v. Whole Wheat Milling Company, 172 N. W. 244; Bowen v. Mutual Life Insurance Company of New York, 20 S. D. 103; 104 N. W. 1040; Collins v. Metropolitan Life Ins. Co., 80 Pac. 609, and 1092; Reserve Life Insurance Co. v. Hocket, (Ind.) 73 N. E. 842.

(3)   To point three, Appellant cited: Bell v. Missouri State Life Insurance Co., 149 S. W. 33 (Mo.); Perry v. Security Life & Annuity Co., 63 S. E. 679 (N. C.); Rushing v. Manhattan Life Insurance Company, 139 C. C. A., 520, 224 Fed. 74.

Respondent cited: Anderson v. Mutual Life Insurance Company, Cal. 130, Pac. 726.

(4)   To point four, Respondent cited: American Credit Indemnity Co. v. Hect Company, Ken. 127, S. W. R. 697 P. 699.

McCOY, P. J.   Action to recover on policy of life insurance.  From findings and judgment in favor of plaintiff, defendant appeals.

Respondent is the beneficiary under the policy sued on, and is the mother of John A. House, an unmarried young man, who is named in the said policy as the insured.  On the 24th day of January, 1919, John A. House was solicited by agents of appellant to make written application for life insurance, and on that date signed, executed, and delivered to said agents written application, which, among other things, contained the following stipulations:

No statements, representations or information made or given by or to the person soliciting or taking this application for a policy, or to any other person, shall be binding on the company or in any manner affect its rights, unless such statements, representations or information be reduced to writing and contained in this application; and that under no circumstances shall the insurance hereby applied for be in force until payment in cash for the first premium while the applicant is in good health and a delivery of the policy to the applicant in person during his lifetime and while in good health.

On the 26th day of January the said applicant was examined by the local medical examiner of appellant.  On January 29th the said application, report of medical examiner, and $74.60 in money for the first premium, were delivered to appellant as its home office in the city of Omaha, where, on January 30th, the same were referred to the medical committee of appellant. Thereafter, said application was sent to and passed through the various departments of appellant's home office, where on the 14th day of February, 1919, the said application was approved and said policy in fact executed by the proper officers of appellant, but which policy was then antedated and made to bear date of January 30, 1919, and was then mailed addressed to said John A. House at Sioux Falls, S. D., and was received by respondent on February 15th.  On the 6th day of February said applicant was taken with influenza, from which he died on February 13th. On February 18th appellant was advised of the death of applicant, and on the 23d of April offered to return the premium.

The president of appellant testified that all policies of appel-

lant, by arbitrary rule, were dated on the day the application was referred to the medical committee; that the collection of all subsequent premiums was based on that date. Among other things, the said policy contained the following stipulation:

In consideration of the application for this policy, which is made a part of this contract, and of an advance premium of $74.60, to be actually paid in cash on or before the delivery thereof for one year's insurance from the date of this contract, and for the advance reserve required theron, and upon the condition of the further payment in advance of a like amount on or before the 30th day of the month of January in each succeeding year during the continuance of this policy, or until twenty years' premiums shall have been paid, hereby insures the life of John Albert House of Sioux Falls, S. D., in the sum of twenty-five hundred dollars.

[1] On the trial respondent called as a witness one Newell, the local agent who solicited and took said application, and who testified that when he took said application one Salmons, state manager of appellant, was present and stated to applicant that the policy would be in force as soon as it was O. K.'d by the doctor, or as soon as he took the medical examination here; that the doctor was practically the man that decided whether he could get insurance or not. Appellant objected to the reception of this evidence on the ground that it was an attempt to vary the terms of a written instrument. The reception in evidence of this testimony over the objection and exception of appellant is now assigned and urged as error. It is the contention of respondent, and the trial court so held and found, that, by virtue of said representation of Salmons, the evidence of the president of appellant that according to universal rule all policies of appellant were dated as of the date of the reference of the application to the medical committee and the fact that the policy by its terms commenced said term of insurance on the 30th day of January, appellant impliedly waived the said stipulation of the application as to the time of the commencement of the said contract of insurance. It is uncontroverted that this applicant for insurance, notwithstanding said oral conversation with said Salmons, executed and delivered to appellant the written application containing the said provisions hereinbefore quoted. Such are usual and common stipulations in insur-

ance applications.  We are of the opinion that the said evidence of Newell, under the circumstances of this case, was erroneously admitted.  Section 860, Rev. Code 1919, provides:

"The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter, which preceded or accompanied the execution of the instrument."

We are of the view that the testimony of the witness Newell is clearly within the rule established by this statute.

[2, 3]  It seems to be generally held that the parties to insurance contracts may, by express or implied agreement, subsequent conduct, or by the terms of the policy issued, waive provisions of a written application on which the policy is based, and that where there is a conflict or material variance between the provisions of an application and the policy the provisions of the policy must control.  Anderson v. Mutual Life Ins. Co., 164 Cal. 712, 130 Pac. 726, Ann. Cas. 1914B, 903.; Burt v. Burt, 218 Pa. 198, 67 Atl. 210, 11 Ann. Cas. 708, and note.  If by a lawful policy subsequently executed the appellant materially varied from the terms of the application and issued a policy expressly starting the running of said contracts of insurance at a different and earlier date than that specified by the terms of the application, and said policy, as so drawn, had been accepted or consented to by the applicant in his lifetime, then, and in that case, it might properly be held that the provisions of the application, as to when the contract of insurance should commence, had been waived, and that the provisions of the policy must control; and, under such circumstances, it also might properly be held that the admission of the testimony of the witness Newell, although erroneous, was wholly immaterial and nonprejudicial to appellant.  From the record before us there seems to have been no subsequent conduct or circumstances in relation to the acts of the parties that might or could upon any theory be held to constitute a waiver of the said provisions of the application, other than the issuance of the policy in question and the circumstances surrounding the issuance thereof.  Therefore, as we view it, the vital question is whether or not a valid and binding contract of insurance ever came into existence between the appellant, insurance company, and said John A. House prior to his death on February 13th.  In the case

of Stemler v. Stemler, 31 S. D. 595, 141 N. W. 780, this court held that the liability of the insurer must be determined from the contractual relations existing between the insured and the insurance company at the instant of the death of the insured; that after the death of the insured the insurance company was powerless to enter into any new contract with him, or to change any old contractual relations existing between them, whether it had notice of his death or not. The decision of Reserve Life Ins. Co. v. Hockett, 35 Ind. App. 89, 73 N. E. 842, is directly in point. In that case the provisions of the application involved were the same as in this; the application was signed and delivered and the first premium paid on April 5; the application and first premium were received at the office of the insurer on April 7; the applicant died on April 8, and on April 9 the policy was in fact issued and mailed, which policy like the one in question, expressly provided that the term of insurance commenced on April 5th, the date of the application and payment of the premium. Among other things, the court in rendering the opinion in that case said:

"When the decedent, in his application, made a proposal to become insured, he stated that a certain cash installment had been paid to make the insurance binding upon the company from the date of the delivery of the policy; and he agreed that the policy issued on the application should not take effect unless the premium was paid, nor unless the policy was delivered to him while he was in good health. Upon compliance with these conditions precedent, the contract of insurance was to take effect. The first was complied with—the premium paid. The second—as indispensable to the taking effect of the policy as the first—was never complied with, and never could be complied with, because the life of the applicant sought to be insured had ended before the policy was written and issued. It is not a question of the proper construction to be given a doubtful or ambiguous provision of a policy. The parties had the right to contract out of their negotiations any uncertainty that might arise as to when the risk should attach and the insurance become binding upon the company. This they did. While negotiations for insurance were commenced when the application was signed and the premium paid on April 5th, yet no contract was then made, nor was

it the purpose to contract afterwards in any manner other than by a policy issued by the company and delivered to the applicant. The contract was not made, in any event, before April 9th, and at that time one party to the contract was dead, and the subject-matter of the contract, the life regarding which the contract was made, did not exist. The death of Hockett on April 8th rendered the making of the proposed contract of insurance impossible. The fact that the policies, when issued on April 9th, were dated back as of the date of the application, April 5th, is not controlling. No contract of insurance was made prior to April 8th, and after that date no contract could be made that would be effective from any date."

[2] For the reasons stated in the decisions cited and quoted, we are of the opinion that at the time of the death of the applicant, John A. House, the provisions of the said application, whereby he agreed that under no circumstances should said insurance so applied for by him be in effect until a delivery of the policy to him during his lifetime while he was in good health, was in full force and effect, the fulfillment of which agreement was a condition precedent to the completion of the contract of insurance thereby applied for by him; that the policy issued after his death was wholly ineffectual either as a completed contract of insurance or as a waiver of the said stipulation contained in the application; and that, by reason thereof, no binding contract of insurance was in existence between appellant and said John A. House at the time of his death.

The judgment and order appealed from are reversed, and the cause remanded.