POLICYHOLDER'S NATIONAL LIFE INSURANCE COMPANY, Appellant, v. NELSON, Respondent.

(211 N. W. 444.)

(File No. 5871.    Opinion filed December 31, 1926.)

1.  Insurance—Bills and Notes—Payment—Note for First Year's Premium Is "Payment" Thereof, Entitling Beneficiary to Benefits if Insured Dies Within Year.

    Promissory note, given as first year's premium on life policy, constitutes "payment" thereof, entitling beneficiary to benefits of policy if insured dies within year.

2.  Evidence—Agent's Statements as to Kind of Life Policy to Be Issued Held Inadmissible in Action on Premium Note (Rev. Code 1919, § 860).

    In life insurer's action on premium note, testimony as to agent's false statements that defendant would receive an old line policy held inadmissible, as violating Rev. Code 1919, § 860, as to merger of oral negotiations in written contract.

3.  Insurance—Evidence in Action on Premium Note Held Insufficient to Take to Jury Defense of False Representations of Kind of Policy.

    In life insurer's action on premium note, evidence held insufficient to take to jury defense of false representations by insurer's agent that defendant would receive an old line policy if he would give note.

4. **Insurance—Estoppel—Insured Not Advising Insurer of Misrepresentations Before Premium Note Came Due, Nor Tendering Back or Demanding Return of Note, Held Estopped to Deny Its Validity.**

Insured reading and understanding application before signing it, signing short, concise receipt for policy, acknowledging satisfaction with its terms 48 days later, and thereafter reading policy, which clearly stated terms, but not advising any officer of insurer that it was not what he had thought until long after premium note came due, and never tendering back, or demanding return of note, held estopped to deny validity thereof.

5. **Insurance—Life Policy Not in Standard Form Held Not Shown So Clearly Illegal as to Invalidate Premium Note Sued on (Rev. Code 1919, §§ 9331, 9340, 9341).**

Charter membership policy on 20 payment life graded death benefit plan held not so clearly illegal, under Rev. Code 1919, § 9331, as to invalidate premium note, where it was not before Supreme Court in its entirety, and omitted provisions, required by section 9340 in other than standard policies, or included provisions prohibited by section 9341, were not shown.

Note.—See, Headnote (1), American Key-Numbered Digest, Insurance, Key-No. 186(5), 32 C. J. Sec. 333; (2) Evidence, Key-No. 413, 22 C. J. Secs. 1459, 1471; (3) Insurance, Key-No. 188(3), 33 C. J. Sec. 773; (4) Insurance, Key-No. 187(2), 32 C. J. Sec. 338; (5) Insurance, Key-No. 188(2), 33 C. J. Sec. 775.

Promissory note as payment of premium on insurance policy, see 14 R. C. L. 966, 3 R. C. L. Supp. 323.

Appeal from Circuit Court, Sanborn County; Hon. Frank B. Smith, Judge.

Action by the Policyholder's National Life Insurance Company against G. W. Nelson. From a judgment for defendant and an order denying a motion for a new trial, plaintiff appeals. Reversed and remanded.

*Ray E. Daugherty* and *Johnson & Simons,* all of Sioux Falls, for Appellant.

*Null & Royhl,* of Huron, for Respondent.

MISER, C. Appellant insurance company sues defendant on his promissory note for $224.50, given to one Aldrich, its agent, of which note appellant claims to be the holder in due course. This note was dated July 19, 1923, and came due on December 1, 1923. The answer alleges that Aldrich falsely represented to de-

fendant that, if the defendant would give a note for one year's premium, the defendant would receive a policy for life insurance in the sum of $5,000, which policy, in all respects, would be the same as the life insurance policies then being written by old line life insurance companies; that the defendant, relying on those representations, signed an application for a charter membership policy on the 20 payment life graded death benefit plan for $5,000 insurance, with an annual premium of $224.50; that, at the time of signing the application and as a part of the transaction, defendant signed the promissory note; and that the representations so made were false and untrue in that, in case of death during the first year, only a sum equal to one-fifth of the amount of the policy should be paid; and that, thereafter, appellant sent to the defendant the policy, for the first premium of which the note was given; that the defendant, upon discovering the true import and terms of such policy, tendered the same back to the plaintiff and demanded the return of his promissory note; and that the policy was not authorized by the laws of the state of South Dakota and is illegal.

As part of defendant's answer, he set out the policy and the application therefor; but the briefs do not give the policy in full.

On the trial, the plaintiff proved the execution, delivery, and nonpayment of the note, and rested. The defendant then testified that he gave the note for the first year's premium; that he signed the application which he had set forth in his answer, which application contained the provision, over his signature, that the policy contract should not "take effect until the first premium shall have been paid, and the company shall incur no liability until this application has been approved by the company and a policy issued and delivered thereon, during my life and good health. I hereby certify that I have examined and accept the provisions of the policy applied for, and said company shall not be held responsible for agent's statements at variance therewith."

Defendant's proof further showed that, by the terms of the policy, his beneficiary was to receive $5,000 if death occurred after the fourth year; if ,however, death occurred during the first four years a lesser amount, being $1,179.60 if death occurred during the first year; and the death benefit increased each succeeding year until the full value of the policy would be received if death

occurred after the fourth year.  This policy contained the following language:

"This policy and the application heretofore taken, together constitute the entire contract."

And also:

"And the company shall not be bound by any promise or representation heretofore or hereafter made, unless made in writing by [the president or secretary]."

Defendant's proof further showed:

That, on September 5, 1923, he received the policy, and that he signed a receipt therefor in which, over his signature, appeared the following language:

"The terms, benefits and advantages promised thereby being as represented to me when giving my application for such policy."

That shortly after that he looked the policy over.  That he saw the secretary-treasurer of appellant company in November, 1923, before the note came due.  That all that was talked about was that the defendant could not pay the full amount, but would like to straighten it up and pay the interest and for whatever trouble appellant had been put to; and, in May, 1924, he again saw the secretary-treasurer and had about the same conversation, in addition to which he told him that he had read the policy over and it was not as they recommended it, and also told him that he wanted him to take it back and straighten up the interest, which the secretary-treasurer refused to do.  There is no other testimony to support the allegation in defendant's answer that the defendant, upon discovering the true import and terms of such policy tendered the same back to the plaintiff and demanded the return of his said promissory note.

Throughout the trial, appellant objected to any evidence on the part of the defendant as to the conversation between Aldrich and defendant, on the ground that it was an attempt to vary by parol evidence the terms of a written instrument.  This objection was made in the form of a motion for judgment on the pleadings, after plaintiff had rested; by motion to strike; by motion for directed verdict after defendant had rested.

In the court's instructions, the jury were told that, if they found from the evidence that the defendant, at the time he signed

the application, was ignorant of the meaning of the term, "charter membership policy on the 20 payment life graded death benefit plan," and, further, that the agent had led the defendant to believe that the application was for an ordinary life insurance policy for $5,000, payable at the death of the defendant, their verdict should be for the defendant; to which the appellant took proper and timely exceptions, and, after a verdict of the jury for the defendant, made a motion for a judgment notwithstanding the verdict, which was denied, and thereafter judgment in favor of the defendant entered; and this appeal is from the judgment entered and from the order denying the motion for a new trial.

[1-4] In the case of House v. Bankers' Reserve Life Co. of Omaha, Neb., 43 S. D. 440, 180 N. W. 69, in which the application for life policy under consideration provided that no restriction should be binding on the company unless in writing, and that the policy should not take effect until delivered to insured during his lifetime, this court held that testimony that insurer's state manager told insured that the policy would be in force as soon as O. K.'d by examining physician was inadmissible under section 860, Rev. Code of 1919, providing that the execution of a written contract supersedes oral negotiations. In the instant case, in his application, defendant binds himself no less certainly than was done in the case last above cited, and admits that he read the application at the time or before he signed it, and that he understood what it contained. Forty-eight days later, when he received the policy, he signed a receipt for it, which receipt was so short and concise that no one could be excused for not reading the same, in which receipt he acknowledged his satisfaction with the terms of the policy. Shortly thereafter he read the policy, which unmistakably clearly stated that if he died within the first year thereafter, his beneficiary would receive approximately $1,000, and thereafter in ascending grade or scale to $5,000 after four years; and yet, more than two months later and shortly prior to the time his note became due, he saw the secretary-treasurer of appellant and did not tell him that he was dissatisfied with the policy, but did tell him that he could not pay the full amount, but would like to straighten it up and pay the interest; and, later and not earlier than February of the following year and long after the note came due, he had almost the same conversation, and then, for the first

time, advised an officer of the company that he had read the policy over and found it to be not just what he thought it was when he signed "it"—all of which was established by the defendant's own testimony—and, in view of the further fact that, except as above stated, the defendant never tendered the policy back to appellant or demanded the return of his promissory note, which by his own testimony he gave as the first year's premium on the policy, and which, under the holdings of this court in Ritter v. American Life Insurance Company, 48 S. D. 231, 203 N. W. 503, and Ritter v. American Life Insurance Company, 48 S. D. 571, 205 N. W. 382, constituted a payment of the first year's premium, which would have entitled his beneficiary to the benefits of the policy should defendant have died within that year, we believe that the trial court should have granted appellant's motion to strike the testimony as to statements made by the agent, Aldrich, such testimony being in violation of section 860, and that the court should have granted appellant's motion to direct the jury to return a verdict for the appellant; for the reason that the defendant had failed to sustain an affirmative defense, and for the further reason that the defendant had been estopped, by his own conduct, to deny the validity of the note, and that the court, having denied said motion and submitted the case to the jury, should have granted appellant's motion for judgment notwithstanding the verdict.

[5]  Respondent contends throughout that the policy is illegal, and that, for that reason, appellant should not recover on its note. In support of this contention, he relies on section 9331 of the Revised Code of 1919, which provides that no policy shall be issued unless authorized by the provisions of the article in which this section appears. Assuming that the policy in question is not a standard form of policy, it is not necessarily, therefore, illegal; for section 9340 contains 13 provisions which must be contained in policies which are in other than standard forms, and, the policy not being before us in its entirety, we cannot say that some of these provisions have been omitted. Section 9341 contains four provisions which are prohibited in other than standard forms; and respondent does not call the court's attention to which of the provisions of section 9340 have been omitted or which of the prohibited provisions of section 9341 are contained within the policy

in suit, and, as to whether this would render the note void, respondent contents himself with saying that, the policy being illegal, the plaintiff is not entitled to recover. The illegality of the policy and the conclusion which respondent draws therefrom that the note itself is void are not so readily apparent.

The judgment is reversed and the case remanded for further proceedings in consonance herewith.

SHERWOOD, J., not sitting.