[S. F. No. 6093.   Department One.—February 19, 1913.]

## LAURA A. ANDERSON, Appellant, v. MUTUAL LIFE INSURANCE COMPANY OF NEW YORK (a Corporation), Respondent.

LIFE INSURANCE—DATE OF ISSUANCE OF POLICY—EXEMPTION FROM LIABILITY FOR SUICIDE WITHIN ONE YEAR.—A condition in a policy of life insurance, providing that the insurance company shall not be liable in the event of the insured's death by his own act during the period of one year after the "issuance of this policy," does not exempt the company for a death by suicide occurring less than one year after the day when the policy was in fact signed by the officers of the company, but more than one year after the day designated in the policy as its date; where it appears from other provisions of the policy, read in connection with the application for insurance which was made a part of the contract, that the latter date was intended to be and was adopted by both parties as the day when the risk attached.

ID.—CONSTRUCTION OF WRITING—USUAL MEANING OF WORD MAY BE DISREGARDED.—In construing any writing, the usual definition of a single word is not a conclusive test of the meaning to be attributed to it in the connection in which it is found. The sense in which the parties employed the particular word or phrase in question must be ascertained from an examination of the entire instrument, read in the light of the circumstances surrounding its execution.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial.  J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Bert Schlesinger, and Guy R. Kennedy, for Appellant.

Chickering & Gregory, for Respondent.

SLOSS, J.—This is an action based upon a policy of life insurance, insuring the life of Philip M. Anderson, in favor of the plaintiff, his wife, in the sum of two thousand dollars. Judgment went in favor of the defendant, and the plaintiff appeals therefrom and from an order denying her motion for a new trial.

The material facts are undisputed. The issuance of the policy, the payment of premiums, the death of the insured, the due presentation of proofs, and nonpayment are all conceded. The defense was that the insured died by his own hand, and that thereby the policy was avoided.

On May 21, 1908, Philip M. Anderson made a written application to defendant for insurance. The application, as the court finds, was returned by the company to the applicant for amendment, and on the twenty-fourth day of June, 1908, Anderson signed a second application. A medical examiner's report, dated May 22, 1908, was attached to the first application. No such report was attached to the second.

On July 6, 1908, the defendant "caused to be executed and issued" the policy sued upon. It bore date the twenty-second day of May, 1908, and referred to the first application, a copy of which was annexed. The policy recited that it was issued in consideration of a premium of $44.50, receipt whereof was acknowledged, and the payment of a like sum upon the twenty-second day of May in succeeding years.

Each of the applications contained the following statements:

"During the period of one year following the date of issue of the policy of insurance for which application is hereby made, I will not engage in any of the following extra-hazardous occupations or employments: retailing intoxicating liquors, handling electric wires and dynamos . . . , unless written permission is expressly granted by the company.

"I also state that I will not die by my own act, whether sane or insane, during the period of one year next following said date of issue."

Among the conditions of the policy itself were these: .

"Occupation. This policy is free from any restriction as to military or naval service, and, as to other occupations of the insured, it is free from any restriction after one year from its date as set forth in the provisions of the application indorsed hereon or attached hereto.

"Suicide. The company shall not be liable hereunder in the event of the insured's death by his own act, whether sane or insane, during the period of one year after the issuance of this policy, as set forth in the provisions of the application indorsed hereon or attached hereto."

On or about May 21, 1909, Anderson paid the defendant the second premium upon said policy. On June 12, 1909, he committed suicide. His death, consequently, occurred less than one year after the day when the policy was in fact signed by the officers of the company, but more than one year after the day designated in the policy as its date.

On these facts, the single question is whether the insured violated the condition of the policy regarding suicide. More specifically, the issue is defined, with sufficient accuracy, in the following language, taken from respondent's brief: "If the date of the policy determines its issuance, the insured did not commit suicide within one year following the issuance of the policy, and the defendant is liable. If the issuance is a physical fact of execution, independent of the date of the policy, the insured committed suicide within one year after the issuance of the policy, and the defendant is not liable." The court below adopted the latter view.

The contention of the appellant is that the twenty-second day of May, 1908, was "adopted by both parties" as the day of issuance of the policy, and that the year, within which

Anderson's death by his own act would avoid the policy, commenced to run on that day.   We think this position is correct.

It must, of course, be admitted, in accordance with the respondent's claims, that the expressions "date of this policy," and "issuance of this policy" are not, according to the ordinary acceptation of the terms, synonymous.   The word "issuance," as applied to a contract like a policy of insurance, would, if standing alone, probably be taken to mean, either the signing (without delivery) of the contract by the authorized officers of the insuring company (*Kansas Mut. L. Ins. Co.* v. *Coalson,* 22 Tex. Civ. App. 64, [54 S. W. 388] ; *Stringham* v. *Mutual Life Ins. Co.,* 44 Or. 447, [75 Pac. 822] ; or, perhaps, the act of delivery of a fully written and signed policy (*Logsdon* v. *Supreme Lodge,* 34 Wash. 666, [76 Pac. 292] ; *Homestead F. Ins. Co..*v. *Ison,* 110 Va. 18, [65 S. E. 463] ; *Lick* v. *Cit. Ins. Co.,* 16 Ind. App. 565, [45 N. E. 804] ).   But in construing any writing, the usual definition of a single word is not a conclusive test of the meaning to be attributed to it in the connection in which it is found.   We must endeavor to ascertain, from an examination of the entire instrument, read in the light of the circumstances surrounding its execution, the sense which the parties employed the particular phrase in question.

Here we find that the policy incorporates, as a part of the contract, the application of May 22d.   Unquestionably the words "issuance of this policy," in the policy itself, were intended to mean the same thing as "date of issue" in the application.   The insurer, acting, so far as the record shows, with full knowledge of all the facts, elected to base its policy upon the first application, to date its policy May 22, 1908, the day upon which the medical examination of Anderson had taken place, to make the premiums payable on the twenty-second day of May of successive years, to make the principal sum payable in the event of death within twenty years from the apparent date of the policy, and to make dividends payable on the twenty-second day of May of each year.   In all these particulars, the company expressed its intention to fix the rights of the parties with reference to the twenty-second day of May in just the same way that these rights would have been fixed if a policy had been actually signed and delivered on that day.   It is perfectly competent for the parties to

agree that a policy shall be antedated and, when this is done, the policy takes effect by relation from the date agreed upon. (1 Cooley's Brief on Insurance, 831, 844; *City of Davenport* v. *Peoria M. & F. I. Co.*, 17 Iowa, 276; *Lightbody* v. *North American Ins. Co.*, 23 Wend. (N. Y.) 18; *Philadelphia Life Ins. Co.* v. *American L. & H. Ins. Co.*, 23 Pa. St. 65.) In the absence of evidence to the contrary, a policy will be presumed to take effect upon its date. (1 Cooley on Insurance, 844; *Union Ins. Co.* v. *American F. Ins. Co.*, 107 Cal. 328, [48 Am. St. Rep. 140, 28 L. R. A. 692, 40 Pac. 431].) "And, after it has been issued and delivered, it takes effect from the date stated by its terms, and not from the date of delivery." (Id.; *Gordon* v. *United States Gas Co.*, (Tenn.) 54 S. W. 98.)

The policy here sued upon, therefore, must be construed as effecting an insurance upon the life of Anderson for a period beginning May 22, 1908. The day upon which, by the agreement of the parties, the risk attached, may reasonably be taken to be the day which was meant to be designated, in the clause under consideration, as that of the "issuance" of the policy. The company inserted in the policy the various provisions above referred to, securing to itself various benefits which would naturally pertain to an insurance issued on the twenty-second day of May, rather than one issued at a later time. It thus became entitled to an earlier payment of premiums; it also received payment for insuring the life of Anderson during a period which had already elapsed when the policy was actually signed and delivered. The policy, then, having been written so as to take effect for its main purpose and its principal incidents, as of the twenty-second day of May, a clause which speaks of the time of "issuance" of the policy is fairly to be taken to refer to that date.

The clause in question has been given the construction just indicated in the case of *Harrington* v. *Mutual L. Ins. Co.*, 21 N. D. 447, [34 L. R. A. (N. S.) 373, 131 N. W. 246], decided by the supreme court of North Dakota since the rendition of the judgment here under review. In holding that the period during which suicide would avoid the policy began at the date of the policy, the court used this language: "The company took premiums for that period, fixed the date of the payment of the premiums as of that date, and made no provision in the contract limiting the dating back solely to the payment

of the premiums. It is well settled that where there is any uncertainty in the terms of an insurance policy the policy will be construed most favorably for the insured, as the language used in the policy is the language of the insuring company.''

But, beyond these considerations, there is a further ground upon which the plaintiff's right to recover should be sustained.

The clause in the application relative to suicide speaks of a period of one year ''next following said date of issue.'' The expression ''said date of issue'' must obviously be referred back to some prior clause in which the term ''date of issue'' is employed. Such prior clause is the one limiting the right of the insured to engage in certain extra-hazardous occupations. In it the application states that ''during the period of one year following the date of issuance of the policy . . . I will not engage in any of the following . . . occupations.'' Clearly the date marking the beginning of the period must be the same in each case. Coming to the policy itself, we find corresponding provisions covering the two subjects of occupation and suicide. The clause of the policy entitled ''occupation'' states that as to occupations other than military or naval service, the policy is free from any restriction ''after one year from its date as set forth in the provisions of the application indorsed hereon or attached hereto.'' Here the period during which the insured's choice of occupations is to be limited is plainly declared to commence at the date of the policy, and the concluding words (''as set forth in the provisions of the application'') afford a clear indication that the period so designated was understood by the framer of the policy (i. e., the defendant) to mean the same period as that described in the application. The clause covering suicide varies the language to ''one year after the issuance of this policy,'' and continues with the same reference ''as set forth in the provisions of the application . . .'' Apparently, then, there was no intent in either case to make a provision which should differ from that indicated by the terms of the application. With reference to occupations, the company, in its policy, gave its own interpretation to the phrase ''one year following the date of issue,'' appearing in both clauses of the application, and we see no good reason for believing that any other interpretation was intended to apply to the suicide provision, regarding which the application followed, in terms, the language

used in restricting occupations. Reading the various clauses of the policy with those of the application as parts of one contract, it seems clear that the three expressions ''date of issue,'' ''date of this policy'' and ''issuance of this policy,'' were used interchangeably to express a single point of time. If this be so, no further argument is needed to establish the conclusion that, under the settled rule that policies of insurance are to be construed against the insurer, the point of time beginning the restricted period of one year must be taken to be the date appearing upon the face of the policy.

It follows that, the defendant having failed to establish the only defense relied upon, the plaintiff was, upon the facts found, entitled to recover.

The judgment and the order appealed from are reversed with directions to the court below to alter its conclusions of law in accordance with the views here expressed, and thereupon to enter judgment in favor of the plaintiff for the amount of the policy, with interest at the legal rate from the time when the loss was payable, together with costs.

Shaw, J., and Angellotti, J., concurred.