(No. 5593. February 6, 1931.)

O. C. BURDICK, Respondent, v. THE CALIFORNIA IN-
SURANCE COMPANY OF SAN FRANCISCO, a Cor-
poration, Appellant.

[295 Pac. 1005.]

James R. Bothwell and W. Orr Chapman, for Appellant.

328

Walters, Parry & Thoman and J. R. Keenan, for Respondent.

GIVENS, J.—In October, 1927, respondent purchased a Paige automobile, insured against loss by fire or theft in appellant company, under a master policy covering this and other cars financed by the C. I. T. Corporation. November 2d, at respondent's request, Mr. Gundelfinger, agent for appellant, not theretofore connected in any way with the sale of the car or the insurance thereon, for $79.20, then paid by respondent, issued a policy in the Insurance Company of North America, covering collision. Later this com-

pany declined the collision risk unless it had the fire and theft coverage, which coverage appellant declined to relinquish. Respondent so told Gundelfinger December 9th, who on that day said in substance that he, Gundelfinger, would have appellant issue the policy for collision and that no additional money would be required. December 12th, Gundelfinger wrote appellant stating the facts with regard to the master policy and requested collision insurance, describing the car, etc. This letter was received by appellant December 15th, and on that day issued a collision rider or indorsement, dating the same December 12th, covering collision, which was sent on the 16th to its agent at Pocatello for countersignature, which agency countersigned the policy and it was transmitted for delivery.

A demolishing collision occurred December 14th. Respondent notified Gundelfinger the 15th, of the wreck and Gundelfinger, December 27th, notified appellant company. January 5th, appellant by telegram requested Gundelfinger to advise it of the cost of repairing the damage caused by the collision. January 10, 1928, appellant refused to pay the loss on the ground that the damage had been suffered before issuance of its policy.

The sole question of the damage suffered, if any, was submitted to a jury. The above facts, shown by the evidence to be undisputed, were submitted to the court for its determination as to whether, as a matter of law, appellant was bound. Appellant contended that Gundelfinger was its agent to write only fire, and not collision insurance, and, because the property was not in existence the day the policy was written, namely, December 15th, and that on December 12th there was no advised ratification of his acts in sending the application, the company was not bound. The court found and concluded that Gundelfinger was the agent of appellant with authority to write collision insurance and also that his acts were ratified by appellant and it was estopped to deny liability.

There is no fraud in the case. From the provisions of the master policy and the collision indorsement certificate, while it is perhaps indefinite as to the length of time the collision insurance would extend, that is, whether from the date of the indorsement slip to the last date of the original policy, October 20, 1928, at noon, or for a year from the date of the indorsement slip, that is, December 12, 1927, to December 12, 1928, no point is made that the policy, if valid, did not cover some considerable period of time after either December 12th or December 15th, 1927. In the absence of other showing, the date of the policy and not the date of issuance usually governs. (*Mutual Life Ins. Co. v. Hurin Packing Co.*, 263 U. S. 167, 31 A. L. R. 102, 44 Sup. Ct. 90, 68 L. ed. 235; *Anderson v. Mutual Life Ins. Co.*, 164 Cal. 712, Ann. Cas. 1914B, 903, 130 Pac. 726; *Union Ins. Co. v. American Fire Ins. Co.*, 107 Cal. 327, 48 Am. St. 140, 40 Pac. 431, 28 L. R. A. 692.)

Appellant cites 26 C. J. 40, and cases, to support the rule that:

"It is an elementary principle of law that the property insured must be in existence at the time when the risk attaches, and if at that time, although without the knowledge of either party, the property is not in existence, there is no valid insurance."

If the policy took effect from its date, December 12th, the foregoing rule does not apply, because in the case at bar the property was in existence when the risk attached, that is, December 12th. Taking the above statement of the law as correct, the important question is, when did the policy become effective, if at all?

A case on facts almost identical with those herein, and, by reason of the failure of the insured therein to promptly notify the company, more favorable to appellant than herein, holds squarely in favor of liability resting upon appellant. (*El Dia Ins. Co. v. Sinclair*, 228 Fed. 833, 143 C. C. A. 231.) The facts in the cited case were as follows: April 21, 1913, certain Duluth insurance brokers telegraphed the insurance

company's agent in New York for a policy on behalf of a certain lumber company. The same day the New York agent wired for further information, which was sent by mail April 23d. April 28th the defendant's agent telegraphed the insurance company's agent as follows: ''Binding fifteen thousand each lumber Bradley, Duluth Log. Send forms.'' April 29th the fire took place and the president of the lumber company was notified of the fire that evening. He did not inform his brokers of the fire. April 29th these brokers wrote the defendant's agent, asking that the policies be forwarded, and on said day was forwarded the information requested. At the time it was written the brokers did not know of the fire, and again on the next day without knowledge of the fire asked for additional forms. May 10th the policy was issued; May 26th the brokers informed defendant's agent of the fire; and having learned of the fire on May 20, July 7, 1913, defendant accepted and retained the premium. For some time after the insurance company had received information of the loss no objection was raised by it to the policy. The only difference between the case cited and the case herein is that herein the premium was not accepted by the insurance company, although remitted to it by Gundelfinger. The policy in the above case issued May 10, 1913, was antedated to cover the period of one year from April 28, at noon, 1913, to April 28, 1914, which covered the fire, which took place, namely, April 29, 1913. The same defense was interposed therein, and the court said:

''The policy in the case at bar is not shown to be in any way affected by fraud. Neither the insured nor the insurer's brokers have practiced any fraud whatever upon the insurer or its agents. It is true that after the fire occurred and prior to the issuance of the policy the insured gave no notice of the loss. But the failure to do so is explained. The general manager of the insured said that prior to the fire he had been informed that he was waiting to get the policy, which had not been issued. Surely, under the

circumstances he was not called upon to say anything. In Joyce on Insurance, vol. 1, sec. 108 (1897), it is said that: 'there is no legal nor moral obligation resting on the assured to voluntarily notify the company of a loss occurring after the risk has attached, although the policy has not been delivered nor the premium paid.' "

"In the case at bar the policy took effect by relation from the day of its date. *Lightbody v. North Am. Ins. Co.*, 23 Wend. (N. Y.) 18 (1840). By antedating the policy the defendant assumed the retrospective risk for which it provided, in the same manner as if it had been issued on the day it bore date. *Hughes v. Mercantile Mutual Ins. Co.*, 44 How. Pr. (N. Y.) 351, 355. It is therefore wholly immaterial in the case at bar that at the time the policy issued or the risk attached the property insured was not in existence; it having been in existence within the period covered by the terms of the policy."

■ There was ample evidence to justify the court in concluding that Gundelfinger was agent of the insurance company, with apparent authority to bind it in this case, and it certainly ratified his act in sending it the application, by the issuance of the policy (*Landes v. Safety Mut. Ins. Co.*, 190 Pa. St. 536, 42 Atl. 961; *McElroy v. British America Assur. Co.*, 94 Fed. 990, 36 C. C. A. 615; *Germania Ins. Co. v. Wingfield*, 22 Ky. Law Rep. 455, 57 S. W. 456); and the court was justified in concluding from the evidence and respondent's understanding of the situation, that the company was estopped to deny Gundelfinger's agency. (*McCornick & Co. v. Tolmie Bros.*, 42 Ida. 1, 243 Pac. 355; *Germania Ins. Co. v. Wingfield, supra; London & L. Ins. Co. v. Gerteisen*, 106 Ky. 815, 51 S. W. 617.)

If Gundelfinger was not appellant's agent for the purpose of submitting applications for collision insurance, appellant knew this fact at the time it issued the policy, but it accepted the application, and, so far as the premium was concerned, by sending a statement for the amount of the premium charged against Burdick as its debtor, waived any

question, of Gundelfinger not being authorized to receive applications for this kind of insurance, or the prepayment of the premium. Lack of written authority of the agent, does not, under the facts herein, avoid liability. (*Landes v. Safety Mut. Ins. Co., supra; Harding v. Home Inv. & Sav. Co.*, 49 Ida. 64, 286 Pac. 920.) The insured notified the apparent agent, whose apparent agency had thus been ratified by the issuance of the policy of the loss.

The evidence shows that respondent considered that he had insurance from and after the 9th, and certainly by appellant's acts, it is estopped to deny liability from and after the date of the policy when the property was in existence. Its later rejection of the premium is not controlling, as the risk had already attached. (32 C. J. 1130; *Marysville Merc. Co. v. Home Fire Ins. Co.*, 21 Ida. 377, 121 Pac. 1026; *National Mut. Fire Ins. Co. v. Sprague*, 40 Colo. 344, 92 Pac. 227; *De Michele v. London Ins. Co.*, 40 Utah, 312, Ann. Cas. 1914D, 1076, 120 Pac. 846.)

Judgment affirmed; costs to respondent.

Lee, C. J., Varian and McNaughton, JJ., and Koelsch, D. J., concur.