15586

SIMONS *ET AL.* v. AMERICAN FIRE UNDERWRITERS OF THE AMERICAN INDEMNITY COMPANY

(27 S. E. (2d), 809)

472

February, 1943.

*Messrs. Edens & Weinberg,* of Columbia, S. C., Counsel for Appellant,

*Mr. T. P. Taylor,* of Columbia, S. C., Counsel for Respondent, Commercial Credit Corporation, and *Messrs. Tompkins & Tompkins,* of Columbia, S. C., Counsel for Respondent Holmes Simons, Jr.,

November 16, 1943.

MR. ASSOCIATE JUSTICE BAKER delivered the unanimous Opinion of the Court:

This action arose out of a collision policy of insurance issued at the time and under the circumstances hereinafter set forth by the appellant to the respondent, Holmes Simons, Jr. Commercial Credit Corporation is a party to the action because the policy of insurance was assigned to it by reason of its chattel mortgage covering the insured automobile, and was delivered to it.

On the evening of March 6, 1941, between the hours of six and seven o'clock, the respondent, Holmes Simons, Jr., called on the telephone one John V. Davis, who was engaged in the business of writing insurance (except life) in the City of Columbia, and requested him to write a collision policy of insurance on his, Simons' automobile, and deliver the policy to the Commercial Credit Corporation. The said insurance agent, who was a local agent for several companies among which was the respondent, agreed to write the policy, "and he said he would cover me."

On the morning of March 7, 1941, at about 10 o'clock, appellant's agent Davis, without any knowledge or notice of the collision hereafter related, having procured the detail information necessary for the writing of the policy, issued and countersigned a collision policy with appellant company covering the respondent Simons' automobile for a "Policy Period: From March 7, 1941 to March 7, 1942, 12:01 a. m., Standard Time, at the address of the Named Insured as stated herein." The policy provided " * * * but this policy shall not be valid unless countersigned by a duly authorized representative of this Company." There is no contention that Davis was not the duly authorized agent of appellant, and that he did not have the authority to countersign the policy.

At an earlier hour on the same day (March 7, 1941), to wit, about 1:30 a. m., the respondent Simons had a collision in Kershaw County, damaging his automobile to the extent of Three Hundred and Ninety-six ($396.00) Dollars.

Upon the trial of the case, and at the conclusion of the testimony, the trial Judge directed a verdict in favor of respondents for the amount of damages to the car, less $50.00 deductible under the terms of the policy.

Prior to the trial of the case on its merits, appellant undertook to have the contract of insurance reformed so as to make its effective date from ten o'clock a. m., March 7, 1941, to ten o'clock a. m., March 7, 1942, alleging that the effective date in the policy from 12:01 a. m., March 7, 1941, to 12:01 a. m., March 7, 1942, was inserted by mutual mistake. By order dated December 18, 1941, such reformation was refused, and there was no appeal from this order.

When did the policy of insurance issued and countersigned by appellant through its agent, Davis, and delivered to Commercial Credit Corporation in accord with the instructions of Simons on the evening before, become a valid binding contract?

It is undisputed that on March 6, 1941, at about 7 o'clock p. m., the respondent, Simons, requested Davis, the local agent of appellant, to cover his automobile with collision and other insurance. Davis was known to this respondent as an established insurance agent, qualified and empowered to write automobile insurance policies. He represented three insurance companies, among which was the appellant, American Indemnity Company. For this and two other companies he was empowered to write, countersign and deliver policies. However, before writing the insurance in appellant company, Davis procured the consent of its general agent in Columbia, Lillard Insurance Agency—in fact, it was at the request of said general agent that the business was placed with appellant. Davis had intended writing the insurance in another company which he represented, and had such company in mind when he agreed to cover the automobile with insurance when Simons 'phoned him on the afternoon before, although he had not stated to Simons the name of any company in which he was writing the policy.

The appellant states in its printed brief "that this case is definitely controlled by the case of *Davis v. Home Insurance Co.*, 125 S. C., 381, 118 S. E., 536, which is directly in point," but in this we think the appellant is mistaken.

In the *Davis case* the controversy arose over the fact that the loss occurred within the twelve-months' period for which the premium had been paid by the insured, but after twelve months from the effective date of the policy as expressed therein. In other words, the effective date stated in the policy was an earlier date than the actual date of the countersigning of the policy. And the policy contained an express provision that it should be valid *only when* countersigned by the duly authorized agent of the Company. Because of this provision the policy was held effective to cover the loss.

In the policy now before the Court, the provision is: " * * * but this policy shall not be valid *unless* counter-

signed by a duly authorized representative of this Company."
(Emphasis added.) It was in fact so countersigned, and there
is nothing in the instrument as introduced in evidence to
deprive the insured of the right to rely upon the terms of the
policy as far as the question of its taking effect is concerned.

The Court can take judicial notice of the fact that
this contract of insurance was prepared by appellant,
the insurer, and should therefore be construed most
favorably to the insured. The Court can further take judicial
notice of the fact that it is a common custom among in-
surance companies writing this class of insurance to per-
mit its agents to verbally bind them to liability for loss for
a reasonable length of time prior to the actual physical is-
suance of a policy.

When Davis, appellant's agent, was testifying as a witness
for appellant, he was asked on cross-examination: "Q.
Therefore, when you actually wrote this policy, the premium
was based upon one year's coverage starting the night be-
fore you actually wrote it. That is what it says and that is
right? A. That is what it says." This witness had just
testified that he was charging a premium from 12:01 of
the morning of March 7, 1941, until 12:01 of March 7,
1942, and that the premium was based upon the stated
coverage.

The exceptions do not extend to the specific contention
that it was within the contemplation of both the insurer and
the insured, when the policy was issued, that no loss had
occurred. Nor was this specific issue raised when appellant
made its motion for a directed verdict upon the trial of the
case in the Court below. However, the pleadings and the ex-
ceptions viewed broadly are probably sufficient to include
this issue, and the point is made in appellant's argument in
this Court. It is true that the law will usually imply an agree-
ment of the parties that at the time of the issuance of a poli-
cy, the thing insured is in *esse,* and that nothing has occurred

that would constitute a claim for loss under the terms of the policy. But that fundamental principle is not applicable to the facts of the present case.

Whether we view the problem in the light of the exceptions on the question when the policy became effective, or from the standpoint of the broader rule last above-stated, the controlling fact with which we are concerned is that a "binder" covering the automobile became effective before the loss occurred. This "binder" was made by an agent authorized to countersign and deliver a policy of the appellant. He did issue such a policy, and although the time of issuance is subsequent to the occurrence of the loss, the policy was issued in pursuance of the "binder," and in conformity with the obligation of such "binder" which was expressed to be effective from a time preceding the occurrence of the loss. There is no suggestion in the record that any element of fraud or bad faith enters into the case. Obviously the loss was not anticipated either by the insured or by the agent. The insured had no part in the actual issuance of the policy. He felt that he could rest secure upon the agent's verbal assurances, which the latter was empowered to give. And the agent, at the time of the issuance of the policy, had no intimation that the loss had occurred.

In such a situation we must deem the "binder" and the policy as a single contract, and to give effect to this contract from the time expressed therein is to do no more than to give effect to the express agreement of the parties to the contract.

In short, the issuance of the policy was not an independent act of the agent. It was merely the formal consummation of a contract already made by the agent.

We of course recognize that if no policy had been actually issued in this case, a different result would be required. "Binder" issued by the agent bound him alone, so long as it was not consummated by the execution

and issuance and delivery of the policy. See, for example, *Fulmer v. London, etc., Insurance Company,* 172 S. C., 525, 174 S. E., 466. But once the policy has been issued, it is a mere matter of applying elementary principles in the field of the law of contracts to hold that the "binder" and the policy merged, and that the merged contract embraces all of the contractual stipulations of the parties, including the undertaking of the agent that the insurance shall be deemed to be effective prior to the time of issuance of the policy.

Was the issue of fraud in reporting the time of the collision to appellant a question of fact to be determined by the jury, or one of law to be determined by the Court?

The policy contained this provision: *"Misrepresentation and Fraud:* This entire policy shall be void if the insured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof; or in case of any fraud, attempted fraud, or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss."

H. G. Willingham, an adjuster for appellants, testified that the respondent, Simons, called him direct and reported the accident about the 12th or 13th of March, and that this procedure was a little unusual in that the ordinary procedure would be to report the accident to the agent who wrote the policy, and the agent would in turn report it to him; that his original notes showed that Simons gave him March 8th as the date of the accident. A formal report of the accident was not made until about March 27, at which time he (Willingham) typed a report based upon information then given by Simons, who was present when it was prepared and signed it, and the date and time of the accident was given as March 8, 1941 at 1 :30 p. m. Upon investigation thereafter this witness learned that the accident occurred on March 7, 1941, at 1 :30 a. m.

It affirmatively appears from the testimony of John V. Davis, the local agent of appellant, and a witness for ap-

pellant, that he learned of the accident about one week thereafter through Ralph Lillard of the Lillard Insurance Agency, that the collision had occurred on the morning of March 7th. The respondent, Simons, called as a witness generally by the appellant, testified that he called (we presume, 'phoned) Mr. Lillard a few days (one or two days) after the collision, and a girl in his office referred him to the insurance adjusting firm of Gay & Taylor or Willingham, and that he then or later got in touch with Willingham. He could not recall the exact date.

Ralph Lillard, another witness for appellant, denied that he knew anything of the collision until Willingham called him on the 'phone about it, and that might have been after April 4th. When it was called to this witness' attention that Davis had testified that he (Lillard) had 'phoned him (Davis) about one week after the collision or accident that Simons had had a collision on March 7th, the witness flatly denied such 'phone conversation, but later said that Davis "could be mistaken."

At the times hereinabove referred to, Simons was a soldier stationed at Fort Jackson, and could not come into Columbia at will. Prior to being inducted into the Armed Forces, Simons had been an insurance agent and had knowledge of the thorough investigation made by fire insurance companies through adjusters before paying claims.

It is under the provision of the policy above set forth and the foregoing testimony that appellant alleges that it was the duty of the trial Judge to submit the issue of fraud to the jury.

The appellant in its printed brief states the issue as follows: "Was there sufficient evidence of fraud in filing the proof of loss in violation of the terms of the policy of insurance or submission to the jury?" "Proof of loss" is a misnomer for the instrument of writing signed by Simons. The statement signed by Simons was a "Notice of loss and advice of claim," and he therein agreed to in due course file

proofs of loss, and further agreed that the furnishing of this blank (the notice of loss was given on a form therefor prepared by the appellant, and the information filed in the blank spaces was typed by appellant's adjuster) "by an adjuster or agent of the insurer is not a waiver of proof or of any rights of the insurer."

We have already held herein that the policy of insurance became effective as a matter of law at 12:01 a. m., March 7, 1941. It is an admitted fact that the collision occurred subsequent to such effective time. Therefore, it was immaterial whether the loss under the policy occurred at the admitted time, March 7, 1941, 1:30 a. m., or at the time appellant's adjuster says the respondent, Simons, told him over the 'phone, and when he prepared the statement of the notice of loss. Such misstatement of fact was not material to the liability of the appellant, and was therefore not an issue in the case. An immaterial statement of fact cannot of course constitute a legal fraud.

All exceptions are overruled, and the judgment appealed from is affirmed.

MESSRS. ASSOCIATE JUSTICES FISHBURNE and STUKES, and CIRCUIT JUDGES T. S. SEASE and E. H. HENDERSON, ACTING ASSOCIATE JUSTICES, concur.