WOODROW P. PRUITT v. GREAT AMERICAN INSURANCE COMPANY, NEW YORK, AND THE WACHOVIA BANK AND TRUST COMPANY.

(Filed 30 March, 1955.)

**1. Insurance § 13—**

In the absence of fraud or mistake, a contract of insurance is conclusively presumed to express the agreement between the parties, and their rights must be determined in accordance with what is written.

**2. Insurance § 43e—**

The certificate of insurance in suit, issued under a master policy, stipulated an 18 month policy period between specified dates. The certificate provided that it should not be valid unless countersigned by a duly authorized agent of the company. *Held:* The certificate does not cover damage sustained in an accident occurring after the expiration of the policy period stipulated, notwithstanding that it occurred within 18 months of the time the policy was countersigned. The certificate did not provide that it should not be valid "until" countersigned, but "unless" countersigned, and therefore, did not create an ambiguity as to the period of coverage, since the word "unless" does not refer to time but to the authenticity of the policy.

**3. Same: Insurance § 12—**

An insurer, in the absence of fraud or concealment, may be held liable for losses antedating the policy if the policy so stipulates and the contract is founded on a consideration, and where a policy or certificate provides that it should not be valid unless countersigned, the inception of the risk need not be delayed until it is so countersigned.

BARNHILL, C. J., took no part in the consideration or decision of this case.

APPEAL by defendant Great American Insurance Company, New York, from *Pless, J.,* November Term 1954 of WILKES.

Civil action on a policy of automobile collision insurance.

Pursuant to G.S. 1-184 a trial by jury was waived. The parties stipulated the facts, summarized below:

*One.* On 10 February 1948 the defendant Great American Insurance Company, New York,—hereafter called the Insurance Company—issued to the defendant Wachovia Bank and Trust Company—hereafter called

the Bank—a Master Policy of Insurance No. A 101, which was in full force in 1952, 1953 and 1954.

*Two.* The Bank, in the course of its business, arranges for the financing of automobiles purchased on the monthly installment plan. Certificates of insurance issued under this Master Policy are written and issued to purchasers of automobiles desiring to borrow money and using the automobile as security for the loan. Such certificates, including Certificate of Insurance No. 47232, the one issued to plaintiff, provide double interest coverage; coverage for the protection of the Bank and the purchaser.

*Three.* On 16 August 1952 plaintiff purchased from Hickory Motor Sales, Inc., of Hickory, a new 1952 Dodge four-door sedan, Motor No. D42-291-254, Serial No. 31882488, and at the time executed and delivered to the Hickory Motor Sales, Inc. a note and conditional sales contract in the sum of $1,423.62. On the same date the Hickory Motor Sales, Inc. assigned the note and conditional sales contract to the Bank.

*Four.* At the time of purchase of the automobile plaintiff paid a premium of $147.50 to the Hickory Motor Sales, Inc. for a collision insurance policy, which premium it forwarded to the Bank. Whereupon the Bank issued and delivered to plaintiff within thirty days of 16 August 1952 Certificate of Insurance No. 47232, which is attached to the stipulations and made a part thereof. We set forth only those parts of the Certificate of Insurance necessary for a decision of this case. "Item 2. Policy Period: From August 16, 1952 to February 16, 1954. 12:01 A. M., standard time at the address of the insured as stated herein." "Premium 1 yr. 6 mos." This part of Item 1: "Subject to all the provisions, exclusions, conditions and declarations contained in the master policy of which this certificate is a part . . ." This part of Item 3: "In consideration of the payment of the premium and in reliance upon the statements in the declarations and *subject to the limits of liability, exclusions, conditions and other terms of the master policy* and this certificate, the company agrees to pay for direct and accidental loss of or damage to the automobile, hereinafter called loss, *sustained during the policy period,* with respect to such and so many of the following coverages as are indicated by specific premium charge or charges." (Italics ours.) This appears in Item 4 in respect to installment payments on the automobile: "Installment payments, Number 18. Amount of each, $79.09. Due Date and Amount of Final Installment, 3-1-54. $(Blank.)" This appears at the bottom of the first page of this certificate: "THIS CERTIFICATE SHALL NOT BE VALID UNLESS COUNTERSIGNED BY A DULY AUTHORIZED AGENT OF THE COMPANY. COUNTERSIGNED: AUGUST 29, 1952 AT WINSTON-SALEM, NORTH CAROLINA. WACHOVIA BANK AND TRUST COMPANY—INSURANCE DEPARTMENT BY /S/ ROMAINE S. ANGEL. AGENT."

*Five.* This Certificate of Insurance No. 47232 was issued in connection with Master Policy No. A 101, which Master Policy and endorsements thereto are attached to the stipulations, and made a part thereof. Under the Heading, "AUTOMOBILE FINANCE MASTER POLICY FORM DOUBLE INTEREST COVERAGE" this appears: "2. ATTACHMENT AND EVIDENCE OF INSURANCE. The insurance hereunder upon each automobile attaches as of the time of execution of the conditional sale, mortgage or lien agreement, but only if reported to this Company within thirty (30) days thereafter. The acceptance of each risk and the particulars of insurance thereon, including the perils insured against, shall be evidenced by an individual policy or certificate of insurance issued hereunder by this Company."

*Six.* The sole question of law involved is whether or not Certificate of Insurance No. 47232 was in effect at the time plaintiff's motor vehicle was damaged on 20 February 1954, and if it was, plaintiff would be entitled to recover under said Certificate of Insurance $1,256.50.

*Seven.* The presiding judge could decide the case upon the admissions in the pleadings, the stipulations, the conditional sales contract and note, the Certificate of Insurance, the Master Policy with endorsements and other competent evidence.

The court found the facts as stipulated, and concluded: "As a matter of law that the certificate contained ambiguous provisions, in that Item 2 designates the policy period as being from August 16, 1952, to February 16, 1954, showing on its face that the premium was paid for one year six months, with the later provision 'this certificate shall not be valid unless countersigned by a duly authorized agent of the company.'" Whereupon it entered judgment that the plaintiff recover $1,256.50 from the Insurance Company, and recover nothing from the Bank.

From judgment for plaintiff, the defendant, Great American Insurance Company, New York, appeals.

*W. H. McElwee, Jr., for Plaintiff, Appellee.*

*Trivette, Holshouser & Mitchell and Joyner & Howison for Defendant, Appellant, Great American Insurance Company, New York.*

PARKER, J. There are no allegations of fraud or of mutual mistake. Therefore, "the written policy is conclusively presumed to express the contract it purports to contain." *Floars v. Insurance Co.,* 144 N.C. 232, 56 S.E. 915: See also *Distributing Corp. v. Indemnity Co.,* 224 N.C. 370, p. 374, 30 S.E. 2d 377. Lacking such allegations this suit is upon the Certificate of Insurance as written. *Burton v. Ins. Co.,* 198 N.C. 498, 152 S.E. 396.

Under an almost identical fact situation the Supreme Court of Alabama in *Union Marine & General Ins. Co. v. Holmes,* 249 Ala. 294, 31 So. 2d 303, held that such provision as to countersigning did not make the contract ambiguous as to the period of coverage. In the Alabama Case the insurance policy contained the following provisions: "Item 2. Policy Period. From February 7, 1943 to February 7, 1944, at 12:01 a. m., Standard Time, at the address of the insured, as stated herein. . . . In Witness Whereof, the company has caused this policy to be executed and attested but this policy shall not be valid unless countersigned on the declaration page by a duly authorized agent of the company . . . Countersigned February 8, 1943 at Birmingham, Alabama . . ." The automobile insured under said policy of insurance was destroyed by collision or upset on 7 February 1944 at 4:45 p. m. The Supreme Court of Alabama said: "Defendant's primary liability, if liable at all, for the damages claimed must rest upon the commitments expressed in the contract, as limited therein. *Great American Ins. Co. v. Dover,* 219 Ala. 530, 122 So. 658. Therefore, conceding that the countersigning of the policy was essential to the completed execution thereof, it is clear that the delayed countersigning did not extend the period of liability, the limitation of which was stated in the face of the contract. Nor did it inject into the contract an ambiguity as to the period of the coverage. The counter signature in fact and law merely confirmed said stated limitation and gave retroactive force to the policy as of the time it was executed by the defendant company. 'To "countersign" is to sign in addition to the signature of another in order to attest the authenticity of the other.' *Royal Exchange Assurance of London v. Almon,* 202 Ala. 374, 80 So. 456, 458; *Hartford Fire Ins. Co. v. King,* 106 Ala. 519, 17 So. 707; *New York Life Ins. Co. v. Tolbert,* 10 Cir., 55 F. 2d 10; *Mead v. Davidson,* 3 Ad. & El. 303, 111 Eng. Reprint 428, 4 L. J. K. B. (N. S.) 193."

In *Dillon v. General Exchange Ins. Corporation,* Tex. Civ. App. 1933, 60 S.W. 2d 331, the facts were these: On 19 March 1931, plaintiff purchased an automobile, and at the same time paid to the seller, Chevrolet Co., for the use and benefit of the defendant Insurance Co. the required premium for one year's protection against loss by fire, theft, etc. In consideration of this premium the Insurance Co. issued the policy sued on. The policy recites on its face that the effective date of same is 19 March 1931 and the expiration date 19 March 1932. The policy also showed on its face, "this policy shall not be valid unless countersigned by the duly authorized agent of the Company at San Antonio, Texas." It was countersigned on 31 March 1931. On the night of 20 March 1932 plaintiff's automobile was destroyed by fire. The Court said: "Appellant's attention is that regardless of the fact that the policy contained the expressed stipulation that it expired at noon March 19, 1932, it was never-

theless in effect on the night of March 20, 1932, because the policy also contained the stipulation that it was not valid unless countersigned by the duly authorized agent of the company at San Antonio, Tex., and that the policy was actually countersigned on March 31, 1931, that appellant had paid for one year's insurance, that he was therefore entitled to one full year's insurance, and that the policy not having been countersigned until March 31, 1931, should not have expired until March 31, 1932. We do not agree with this contention. The insurance company had a lawful right to make this policy effective from a prior date, regardless of the provision that same was not valid unless countersigned by the agent designated. This stipulation had to do with the authenticity of the policy rather than the time from which it should become effective. The policy did not provide that it was not valid *until* countersigned, but *unless* countersigned. Until might be construed as referring to time, but unless does not refer to time. *Bankers Lloyds v. Montgomery* (Tex. Civ. App.) 42 S. W. (2d) 285; *Schwartz v. Northern Life Ins. Co.* (C. C. A.) 25 F. (2d) 555; *Anderson v. Mutual Life Ins. Co.*, 164 Cal. 712, 130 P. 726, Ann. Cas. 1914B, 903."

Under almost identical facts with the present case the Supreme Court of Tennessee held in *McKee v. Continental Ins. Co.*, 191 Tenn. 413, 234 S.W. 830, 22 A.L.R. 2d 980, that a provision in the Certificate of Insurance that "this certificate shall not be valid unless countersigned by a duly authorized agent of the company" merely confirmed the contract as stated, so that the period of coverage ran from the date stated in the policy as that of the inception of risk, rather than from the date of countersignature six days later, and insured could not recover for a loss to his automobile which occurred three days after the expiration of the period of coverage as stated in the policy.

The fact that an insurance policy provides: "This certificate shall not be valid unless countersigned by a duly authorized agent of the company" was held not to alter the inception and expiration dates as set forth on the policy in the following cases: *Simons v. American Fire Underwriters of American Indem. Co.*, 203 S.C. 471, 27 S.E. 2d 809; *Oklahoma Farm Bureau Mut. Ins. Co. v. Brown*, 208 Okla. 317, 255 P. 2d 919. See also Anno. 22 A.L.R. 2d 984.

Plaintiff contends in his brief that *Davis v. Home Ins. Co.*, 125 S.C. 381, 118 S.E. 536, has identical facts with the case here. Counsel for the Indemnity Company contended in the Case of *Simons v. American Fire Underwriters of American Indem. Co.*, supra, which was before the Supreme Court of South Carolina in 1943, twenty years after the *Davis Case*, that the *Davis Case* controlled the *Simons Case*. The South Carolina Supreme Court said: ". . . but in this we think the appellant is mistaken. In the *Davis Case* the controversy arose over the fact that the

loss occurred within the twelve months period for which the premium had been paid by the insured, but after twelve months from the effective date of the policy as expressed therein. In other words, the effective date stated in the policy was an earlier date than the actual date of the counter-signing of the policy. And the policy contained an express provision that it should be valid only when countersigned by the duly authorized agent of the Company. Because of this provision the policy was held effective to cover the loss. In the policy now before the Court, the provision is: '. . . but this policy shall not be valid *unless* countersigned by a duly authorized representative of this Company.' (Emphasis added.) It was in fact so countersigned, and there is nothing in the instrument as intro-duced in evidence to deprive the insured of the right to rely upon the terms of the policy as far as the question of its taking effect is concerned." In this case the facts were these: On 6 March 1941, at about 7:00 o'clock p. m., Simons requested the local agent of the Indemnity Co. to cover his automobile with collision and other insurance, and deliver the policy to the Commercial Credit Corporation. The agent said he would cover plaintiff. About 10:00 a.m. on 7 March 1941 the agent issued and countersigned a collision policy covering plaintiff's automobile for a "Policy Period: From March 7, 1941 to March 7, 1942, 12:01 a.m. Stand-ard Time . . ." At the time the agent issued and countersigned the policy, the agent did not know plaintiff had had a collision with his auto-mobile about 1:30 a.m. on 7 March 1941. The court held that the Indem-nity Co. was liable as plaintiff's damage occurred within the period covered by the policy.

Where a provision in a policy of insurance provides that it shall not be valid *until* countersigned by the company's agent, there is authority to the effect that this is a condition precedent to the validity of the policy. *Burner v. American Ins. Co.,* 221 Mo. App. 1193, 300 S.W. 556; *National Union Fire Ins. Co. v. California Cotton Credit Corp.,* (1935 C A 9th Cal.) 76 F. 2d 279. Webster's New Collegiate Dictionary, the latest edition of the Merriam-Webster series of dictionaries, defines UNTIL as "up to the time that or when." The same authority defines UNLESS thus, "if not; supposing that not; except that." According to Webster's definitions, UNTIL refers to time: UNLESS does not. American Juris-prudence discusses the meaning of the word UNTIL in Vol. 52, Article Time, Sec. 25. See also: Anno. 16 A.L.R. 1090.

This action is upon the Certificate of Insurance as written. The Cer-tificate of Insurance plainly states that it is "subject to the limits of liability, exclusions, conditions and other terms of the Master Policy." The Master Policy explicitly states that the insurance issued upon plain-tiff's automobile attached "as of the time of execution of the conditional sale, mortgage or lien agreement, but only if reported to this Company

within thirty (30) days thereafter." The conditional sale agreement was executed on 16 August 1952, and the Certificate of Insurance was counter-signed, issued and delivered to plaintiff within 30 days after 16 August 1952. There is nothing in the language of the Certificate of Insurance here that the period of coverage will be extended by a delayed counter-signing. It seems clear and plain from these provisions that it was the intention of the Insurance Co. to assume liability before the Certificate of Insurance was countersigned. Appleman, Insurance Law and Practice, Vol. 7, Sec. 4266, states: "An insurer has the right to assume obligations antedating the policy date, if it so elects and the contract is founded on a consideration. Under such circumstances, the insurer is liable for losses antedating the policy, provided there is no fraud or concealment by the insured." The countersigning had to do with the authenticity of the Certificate of Insurance rather than with the inception of the risk: it did not create an ambiguity as to the period of coverage. As was said by the South Dakota Supreme Court in *Stratton v. United States Fire Ins. Co. of New York,* 25 N.W. 2d 239: "We cannot disregard the plain and unequivocal terms of the policy, and make a new contract for the parties."

In the case here the Certificate of Insurance in the plaintiff's possession explicitly and plainly states that the expiration date was at 12:01 a.m., 16 February 1954. It expired on that date according to its terms. *Union Marine & General Ins. Co. v. Holmes, supra; Dillon v. General Exchange Ins. Corporation, supra; McKee v. Continental Ins. Co., supra; Simons v. American Fire Underwriters of American Indemnity Co., supra; Oklahoma Farm Bureau Mut. Ins. Co. v. Brown, supra; Dohlin v. Dwelling House Mut. Ins. Co.,* 122 Neb. 47, 238 N.W. 921; Appleman, Insurance Law and Practice, Sec. 4268; Blashfield, Cyclopedia of Automobile Law and Practice, Sec. 3541; Anno. 22 A.L.R. 2d 984. See also: *Boone v. Standard Acc. Ins. Co. of Detroit,* 192 Va. 672, 66 S.E. 2d 530; *Gulledge v. World Ins. Co. of Omaha,* 199 F. 2d 158.

It may not be amiss to refer to the Form of the Standard Fire Insurance Policy in this State. G.S. 58-176 sets forth a standard form for a fire insurance policy. At the end of the form there is this language: "IN WITNESS WHEREOF, this Company has executed and attested these presents; but this policy shall not be valid unless countersigned by the duly authorized agent of this Company at the agency hereinbefore mentioned." G.S. 58-177 (d) provides: "Binders or other contracts for temporary insurance may be made, orally or in writing, for a period which shall not exceed 60 days . . ." It would seem that the North Carolina Standard Fire Policy means that the inception of the risk is not delayed until the policy is countersigned. See *Lea v. Atlantic Ins. Co.,* 168 N.C. 478, 84 S.E. 813.

The plaintiff cites in his brief in support of his argument *Cheek v. Insurance Co.*, 215 N.C. 36, 1 S.E. 2d 115; *Turlington v. Insurance Co.*, 193 N.C. 481, 137 S.E. 422; *Ross v. Insurance Co.*, 124 N.C. 395, 32 S.E. 733; *Ormond v. Insurance Co.*, 96 N.C. 158; 1 S.E. 796. Those cases dealt with provisions in insurance policies fundamentally different from the one here. For instance, in the *Cheek Case* the consummation of the contract of insurance depended upon the approval of the home office.

The plaintiff contends that there was no meeting of the minds and the contract did not come into existence until the Certificate was countersigned. To agree with that argument would require us to ignore the provision that the insurance attached "as of the time of execution of the conditional sale . . . agreement, but only if reported to this company within thirty (30) days thereafter."

For the reasons stated above, the judgment of the Trial Court is

Reversed.

BARNHILL, C. J., took no part in the consideration or decision of this case.