(No. 39421.—

LORRAINE CARROLL, Admr., *et al.,* Appellees, *vs.* PREFERRED RISK INSURANCE Co., Appellant.

*Opinion filed March 24, 1966.*

SCHAEFER and UNDERWOOD, JJ., dissenting.

TREACY AND BREEN, and JEROME H. TORSHEN, both of Chicago, for appellant.

BLOCK & LEVY and ALVIN R. BECKER, both of Chicago, for appellees.

Mr. JUSTICE SOLFISBURG delivered the opinion of the court:

The defendant, Preferred Risk Insurance Company, was allowed leave to appeal to review the decision of the appellate court (60 Ill. App. 2d 170,) affirming a declaratory judgment that the plaintiff is entitled to avail herself of the benefits under an uninsured motorist coverage clause of an auto insurance policy issued to plaintiff's decedent by Preferred Risk.

Defendant, Preferred Risk, contends that plaintiff can not avail herself of the uninsured motorist coverage since the injuries and resultant death of plaintiff's decedent were caused by an auto accident involving a third party covered by a policy of bodily injury insurance. The critical issue posed on this appeal is whether or not the third party, John Mimms, was insured for liability with Adams Mutual Insurance Company at the time of the accident.

On June 22, 1962, at 5:00 P.M. John Mimms completed an application to Adams Mutual Insurance Company for automobile liability insurance at the Iberra Insurance Agency, applying for coverage commencing at 12:01 A.M. on June 22, 1962. The application was mailed to Adams that day and received by John Van Gundy, vice president and underwriting manager of Adams, on June 25, 1962. The application contained a statement by Mimms that he had no prior accidents. It is not disputed that Iberra Insurance Agency had no authority from Adams to issue a binder for auto liability insurance to Mimms and was not acting as agent for Adams. On June 25, 1962, the application was processed and approved by Adams and on June 26, 1962, policy No. 26187 was mailed to Iberra bearing an effective date of June 22, 1962, 12:01 A.M. On June 22, 1962 at 10:00 P.M. plaintiff's intestate, John Carroll, while driving his car, was involved in a fatal accident with John Mimms. Thereafter Adams recovered the policy from Iberra. There is no evidence that Mimms ever paid a premium on the policy, and there is no question but that no policy existed by binder or otherwise at the time of the accident.

The relationship between an applicant and an insurer requires good faith on the part of the applicant because of the peculiar character of the insurance contract. The applicant has an obligation imposed by law to notify the insurer of any changed condition materially affecting the risk during the pendency of the application for insurance. *Western and Southern Life Insurance Co. v. Tomasun,* 358 Ill. 496; *Stipcich v. Metropolitan Life Insurance Co.* 277 U.S. 311, 72 L. Ed. 895.

In the *Stipcich* case the United States Supreme Court referring to the rule of continuing obligations stated at 277 U.S. 316: "But the reason for the rule still obtains, and with added force, as to changes materially affecting the risk which come to the knowledge of the insured after the application and before delivery of the policy. For, even the most unsophisticated person must know that in answering the questionnaire and submitting it to the insurer, he is furnishing the data on the basis of which the company will decide whether, by issuing a policy, it wishes to insure him. If, while the company deliberates, he discovers facts which make portions of his application no longer true, the most elementary spirit of fair dealing would seem to require him to make a full disclosure." Earlier, in the same opinion, the court said. "But there is no contention here that the parties contracted exclusively on the basis of conditions at the time of the application. Here, both by the terms of the application and familiar rules governing the formation of contracts, no contract came into existence until the delivery of the policy, and at that time the insured had learned of conditions gravely affecting his health, unknown at the time of making his application."

*Palmer v. Bull Dog Auto Insurance Ass'n,* 294 Ill. 287, involved a similar problem. In *Bull Dog* the plaintiff applied for an automobile theft policy and sent the application and premium to the insurer. The loss occurred, as in the case at bar, after the application was mailed, but prior to ac-

ceptance by the insurer. The court held that the loss was not covered by the policy, stating at pages 291-292: " 'Where a loss occurring before the risk attaches is known only to the applicant and he obtains a policy without disclosing the fact of loss the policy is void, even though the contract be given a date prior to the loss.' (I Joyce on Insurance, 2d ed., sec. 107.) The risk could not have attached to the auto under this contract until the application had been accepted on August 8 by the attorney in fact, and that was after the auto had been stolen. * * * An application for insurance is not itself a contract but is a mere proposal, which requires acceptance by the insurer through someone actually or apparently authorized to accept the same, or to give it effect as a contract. (I Cooley's Briefs on Insurance, 413.) In *Merchants' Ins. Co.* v. *Paige,* 60 Ill. 448, a marine insurance policy was obtained on goods shipped on a vessel lost two days prior to the date of the policy. This loss was known to the insured at the time but he failed to inform the agent, and it was decided that the particular agent effecting the insurance should have been informed; that knowledge by the company of the loss did not necessarily arise from the fact that the daily papers received at the company's office on the day the policy was issued contained a notice of the loss, and that notice to one agent of the company did not necessarily import a notice to the other."

While Mimms executed the application for insurance on June 22, the day of the fatal accident, the application was not received by Adams until June 25. Pursuant to ordinary contract principles, the application did not become an offer until it was communicated to the offeree, Adams, more than two days after the undisclosed fatal accident. It is essential to the existence of an offer that the proposal by the offerer be made known to the offeree. (Restatement of Contracts, § 23; 17 C.J.S., Contracts, sec. 38.) On the application Mimms answered in the negative to the question, "Has the applicant or any other person been involved in an

automobile accident while operating any private passenger type automobile resulting in any damage to any property, including his own, or in bodily injury or death, during the preceding 36 months?" We feel that the answer to this particular question must be considered a continuing representation that there has been no intervening material change in the risk from the date of the application to the time the policy is issued. *Strangio* v. *Consolidated Indemnity & Ins. Co.* (9th cir.) 66 F.2d 330.

The record does not indicate that John Mimms actively misrepresented to Adams Mutual Insurance Co. any portion of his application for insurance but there is no evidence that Mimms did notify the insurer of the fatal accident prior to the issuance of the policy. Defendant insists that plaintiff has failed to prove a lack of knowledge on the part of Adams, but Van Gundy, vice-president in charge of the underwriting department of Adams, testified that he first became aware of the accident between Mimms and plaintiff's intestate on Wednesday, June 27, 1962, the day after the application had been processed and mailed to the Iberra Agency. The record shows that Adams Mutual immediately sent one of their employees to regain physical possession of the policy from the Iberra Agency. On Thursday, June 28, 1962, Adams voided the policy on all their records. There is certainly a reasonable inference that Adams would not have issued the policy had they been aware of the accident of June 22. Based upon the record it was proper for the trial court to conclude from the evidence in the record that Adams was unaware of the accident before issuing the antedated policy. We do not believe the plaintiff must completely negative any possibility of knowledge in this situation. *Merchants' Insurance Co.* v. *Paige,* 60 Ill. 448.

Insurance policies have traditionally called for good faith, openness and candor on the prospective insured's part, and to reduce this standard would seriously alter and disrupt

the purpose of insurance. Since we believe the trial court could find from the record that the prospective insured, John Mimms, failed to apprise Adams Mutual of the fatal collision, the refusal to grant Mimms retrospective coverage was legally proper.

We have carefully examined the cases cited by defendant to support its conclusion and we find them factually inapposite. Most of the cases cited involve the authority of the agent to issue a binder and a construction of the term, "not valid unless countersigned." (*Simons* v. *American Fire Underwriters*, 203 S.C. 471, 27 S.E.2d 809; *Union Marine & General Insurance Co.* v. *Holmes*, 249 Ala. 294, 31 So.2d 303; *Pruitt* v. *Great American Insurance Co.* 241 N.C. 725, 86 S.E.2d 401; *Burdick* v. *California Insurance Co.* 50 Idaho 327, 295 Pac. 1005; *McKee* v. *Continential Insurance Co.* 191 Tenn. 413, 234 S.W.2d 830.) Others involve a predated policy covering the destruction of property without the knowledge of either the insured or the insurer.

In the present case Iberra was the agent of Mimms and had neither apparent nor actual authority to bind the risk. The material increase in the risk due to the fatal collision was known to Mimms but unknown to the insurer prior to the issuance of the policy. We, therefore, conclude that the issuance of the policy without disclosure of the increased risk was not effective and Mimms was an uninsured motorist at the time of the collision with plaintiff's intestate.

Defendant earnestly argues that this conclusion permits an insurance company to collect a premium for a period without providing coverage. We must concede that this is true, and it may be said that predating an insurance policy without a binder is illusory and ought to be condemned. However, there is no evidence that Mimms ever paid a premium and there is some indication that the premium was to be financed. We feel that this is a legislative and regulatory matter that may be remedied in those areas and not

by a judicial distortion of basic contract principles or by overruling the Illinois decisions in the *Bull Dog* and *Western & Southern Life Insurance* cases.

Although not bearing on the issues on this appeal we note that commencing January 1, 1963, the major casualty companies have broadened their uninsured motorist coverage by enlarging the definition of "uninsured vehicle" to include an automobile on which liability insurance was written but the insurer has denied coverage.

We therefore conclude that at the time of the collision resulting in the death of plaintiff's intestate Mimms was an uninsured motorist within the meaning of Preferred Risk's policy. The judgment of the appellate court affirming the trial court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE SCHAEFER, dissenting:

The majority opinion correctly states, "The critical issue posed on this appeal is whether or not the third party, John Mimms, was insured for liability with Adams Mutual Insurance Company at the time of the accident." Curiously, however, neither John Mimms nor the Adams Mutual Insurance Company is a party to this action. John Bolton, special deputy liquidator of the Adams Mutual Insurance Company, was named as a party defendant but the summons was returned "not found" as to him. Mimms was not named as a party defendant. In my opinion the trial court should have directed that these parties be joined before proceeding with the case. (See Ill. Rev. Stat. 1965, chap. 110, par. 25.) The absence of these parties of course limits the *res judicata* effect of the judgment in this case.

Their absence also probably accounts for the unsatisfactory condition of the record in several respects. It is assumed that the Iberra Agency was the agent of John Mimms, and not of Adams, but I do not find satisfactory proof of that fact in the record. The record is silent as to

whether or not Mimms had paid the premium on the policy which Adams issued. It does not show when Adams first learned of the accident or who notified Adams of the accident. Van Gundy, the vice president of Adams who issued the policy, testified that other officials of the company were already discussing the accident when he first heard about it. The policy that Adams issued to Mimms does not appear in the record. Van Gundy also testified that after the policy had been repossessed from the Iberra Agency "the entire transaction was voided and never showed on the books of the Adams Mutual Insurance Company."

In these circumstances it seems to me singularly inappropriate to speak of a lack of good faith on the part of the applicant for the insurance policy. In this case the applicant sought insurance coverage from the day he made the application. He applied for a policy that would be effective beginning 12:01 A.M. June 22, 1962. The company was not required to accept that application, but it did so. To permit the company to repudiate its contract thereafter seems to me to sanction bad faith on the part of the insurance company.

The majority opinion states: "The relationship between an applicant and an insurer requires good faith on the part of the applicant because of the peculiar character of the insurance contract. The applicant has an obligation imposed by law to notify the insurer of any changed condition materially affecting the risk during the pendency of the application for insurance." For this proposition the opinion cites *Western and Southern Life Ins. Co.* v. *Tomasun,* 358 Ill. 496; *Stipcich* v. *Metropolitan Life Ins. Co.* 277 U.S. 311, 72 L. Ed. 895; *Palmer* v. *Bull Dog Auto Ins. Ass'n,* 294 Ill. 287, and *Merchants' Ins. Co.* v. *Paige,* 60 Ill. 448.

None of these cases involved the acceptance of an application for coverage from a specified antecedent time. That is what the parties bargained for in this case, and that is the contract that was entered into. The company's acceptance was complete when the policy was deposited in the mail

addressed to the Iberra Agency. (Restatement of Contracts, § 64.) As the majority recognize, such a bargain is not contrary to public policy. Whether or not the Iberra Agency was authorized to issue a binder is immaterial in this case. There is no problem as to the authority of the agent, for the company itself accepted the application which specifically requested the issuance of a predated policy.

In my opinion the majority overlooks the crucial difference between the duty to notify of changed conditions under an ordinary application and the duty that exists when predated insurance is involved. The Supreme Court of the United States drew this distinction in *Stipcich* v. *Metropolitan Life Ins. Co.* 277 U.S. 311, 315; "An insurer may of course assume the risk of such changes in the insured's health as may occur between the date of application and the date of the issuance of a policy. Where the parties contract exclusively on the basis of conditions as they existed at the date of the application, the failure of the insured to divulge any later known changes in health may well not affect the policy."

Several courts in other jurisdictions have upheld the insured's claim on predated insurance against the insurer's contention that the insured violated a duty to notify it of a loss that occurred after the application was executed but before it was accepted. In *Mutual Benefit Life Ins. Co.* v. *Higginbotham,* 95 U.S. 380, 24 L. Ed. 499, 501 (1877), the insurer contended, as here, that the insured had a duty to notify of intervening circumstances, and that the representations about his health made in the application for a predated life policy were "continuing" to the time of acceptance. The United States Supreme Court rejected this argument, holding that the jury could find that the parties had agreed that the risk was to begin on the application date or before "by relation." "Had it been otherwise, we cannot conceive how the sagacious business men who control this Company would have assented to the delivery of the policy

without inquiry as to the intermediate time." Similarly in *Burdick* v. *California Ins. Co. of San Francisco,* 50 Ida. 327, 295 P. 1005 (1931), an insured was allowed to recover against the insurer on a predated auto casualty policy for a loss occurring after the date of the policy but before the application was actually accepted. The court quoted with approval the statement of the Second Circuit Court of Appeals in *El Dia Ins. Co.* v. *Sinclair,* 228 F. 833, 841 (1915), that "By antedating the policy the defendant assumed the retrospective risk for which it provided, in the same manner as if it had been issued on the day it bore date."

The principle recognized by these cases is reflected in those construing the effect of a "not valid unless countersigned" clause. In most of these cases the insured's loss occurs after the termination date of the policy but within its time span if its duration was computed from the date of countersigning. These cases hold that the subsequent loss is not covered, although the contract was not formally complete until it was countersigned. As was said in *McKee* v. *Continental Ins. Co.* 191 Tenn. 413, 234 S.W.2d 830, 832 (1950), "where the application is made in good-faith to one having authority to receive the application and a loss happens between that and the countersigning, and there is no fraud involved, the better reasoned cases hold that the Insurance Company is liable for the loss that happened pending the countersignature." See also *Pruitt* v. *Great American Ins. Co.* 241 N.C. 725, 86 S.E.2d 401 (1955); *Union Marine & General Ins. Co.* v. *Holmes,* 249 Ala. 294, 31 So. 2d 303 (1947); *Dillon* v. *General Exchange Ins. Corp.* 60 S.W.2d 331 (Tex. Civ. App. 1933).

There are two cases which seem to support the majority's position, *Stranglio* v. *Consolidated Indemnity & Ins. Co.* (9th cir. 1933) 66 F.2d 330 and *Millar* v. *New Amsterdam Casualty Co.* (App. Div. 1936), 289 N.Y.S. 599, but their results have been severely criticized. "It appears that many

companies have fallen into the practice of predating policies to the time when the application for insurance was made. If no loss had occurred in the interval between application and issuance of the policy, all is well. But when such a loss has been sustained, the insurer then attempts to wriggle out of liability on the ground that the risk has been increased without its knowledge. It is submitted that a rule of law which sustains this position is instrumental in perpetrating a fraud upon the insured. If the insurer dates back its policy, and charges a premium for such period of time, it should bear the risk of a loss occurring within the same period of time. It would be monstrous to allow the insurer to charge for a coverage which it was never prepared to assume." 7 Appleman, Insurance Law and Practice, sec. 4266 (2d ed. 1962).

For these reasons I am unable to join in the majority's conclusion that Mimms was an "uninsured motorist."

Mr. JUSTICE UNDERWOOD joins in this dissent.